Bernard WASHAM, Plaintiff,

v.

J. C. PENNEY COMPANY, INC., Defendant.

Civ. A. No. 80–508.

United States District Court, D. Delaware.

July 23, 1981.

Eugene J. Maurer, Wilmington, Del., of counsel; Michele Kudish, Swerdlow, Leitzeu, Brook & Kudish, Media, Pa., for plaintiff.

Lawrence A. Hamermesh, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., of counsel; Walter G. Bleil, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

STAPLETON, District Judge.

Bernard Washam commenced this action under Title VII of the Civil Rights Act of

1964 (42 U.S.C. § 2000e, *et seq.*), and Section 1 of the Civil Rights Act of 1866 (42 U.S.C. § 1981) in the United States District Court for the Eastern District of Pennsylvania on June 30, 1980. Both parties consented to its transfer to this Court on October 15, 1980. The plaintiff alleges that J. C. Penney Company, Inc. ("Penney") unlawfully discharged him from its employ because he is black. He seeks reinstatement as the Security Manager of Penney's store at Prices Corner in Wilmington, Delaware; back pay from August 18, 1977 until his old job is restored; punitive damages and injunctive relief.

Two motions are now before this Court. Plaintiff has moved to strike four affirmative defenses raised in the Answer. Relying upon these same defenses, defendant asks for summary judgment. All of the defenses in issue address the preclusive effects of a decision by the National Labor Relations Board ("NLRB") upon the claim presented here. In its decision, the Board found that Penney had committed an unfair labor practice, in violation of sections 8(a)(1) and 8(a)(4) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(1), (a)(4)), and awarded plaintiff back pay and reinstatement.[1] Defendant now urges that the doctrines of payment, accord and satisfaction, estoppel, waiver, *res judicata* and collateral estoppel bar relief in this action.

## I.

In early 1970, J. C. Penney decided to improve its internal protection against employee pilferage, shoplifting, and other store security problems.[2] One consequence was the decision to hire Bernard Washam as a Security Manager in March of 1970. Initially, plaintiff divided his time between his own security agency, Profit Protection Systems, and several Penney stores located in the Delaware Valley. He assumed responsibility for hiring, training and supervising security personnel. At a later date Washam was assigned to the Prices Corner store exclusively.

In March of 1977, Washam met with Carol Eller, Pauline White and Edmund Mitchell, the three employees under his direct supervision, and asked whether they wanted union representation. Subsequently, Washam arranged a meeting between the Penney security guards and Dan Caesar, a representative of the International Union of Security Guards. After the meeting, Caesar contacted Store Manager Charles Ryan and told him that the security employees wanted a union.

Washam's participation in union organizing placed him in conflict with store management. According to the Findings of the Administrative Law Judge[3], the dispute smoldered for some two months. On July 23, 1977, Edmund Mitchell, who is white, followed two suspected shoplifters out of the store and then confronted three other persons who seemed to be helping them. Mitchell then produced a gun. Upon learning of the incident, Ryan called Washam and instructed him to discharge Mitchell for violating a company policy against carrying weapons inside the store. Although Washam protested that neither he nor Mitchell had had any knowledge of such a policy, he eventually signed a statement informing Mitchell that he was to be discharged for breaking a known company rule. Washam and Carol Eller continued to carry weapons inside the store.[4]

Mitchell filed a complaint with the NLRB, charging that Penney had fired him

---

1. Subsequently the Board agreed that reinstatement was not required for compliance with its Order.

2. This summary of background facts is taken from the record developed in discovery in this action and from the record and Findings of the Administrative Law Judge in the NLRB proceedings. It is not intended as a statement of undisputed facts.

3. Findings of Fact, Case No. 4–CA–8951, May 11, 1978, Defendant's Brief in Opposition to Plaintiff's Motion to Strike Insufficient Affirmative Defenses, Ex. 2 (Document No. 12).

4. Eller, who is white, was not discharged, although the ALJ found that Ryan knew that she continued to carry a gun after Mitchell was fired.

because of his involvement in the effort to organize the security staff. Washam refused to testify on Penney's behalf at the NLRB hearing. He too was accused of violating Penney's gun policy and discharged on August 17, 1977. The following day, Washam instituted proceedings before the Equal Employment Opportunity Commission ("EEOC").

On October 3, 1977, Washam also filed a complaint before the Delaware Department of Labor, which referred the matter to the NLRB. The Board consolidated his case with that of Edmund Mitchell, and after a hearing, concluded that both men were wrongfully discharged. The ALJ found that Penney's "gun policy" was a pretext for actions motivated by anti-union animus. He therefore ordered Penney to reinstate Mitchell and Washam, with full back pay. The Board affirmed that decision on August 17, 1978.

Although the precise sequence of events is not clear from the present record, about a year after Penney discharged him but prior to the final NLRB decision, a Delaware State Grand Jury indicted Washam on charges of fraud and false statements to the unemployment office. He pleaded guilty to one felony count (tampering with government evidence) and two misdemeanors (submitting false information and falsifying business records). The Court sentenced him to four years imprisonment, of which two years were suspended.

On January 19, 1979, Penney reported Washam's conviction and incarceration to the NLRB, refusing to reinstate him as the Board's order required because "[i]n view of Washam's felony conviction and current incarceration he is not fit for employment by Respondent." [5] The NLRB agreed that Washam need not be reinstated and determined that Penney had complied with its order.[6]

On February 28, 1980, the EEOC determined that there was reasonable cause to believe that Washam's discharge was a result of racial discrimination in violation of Title VII. The Commission's conciliation efforts failed, and a right to sue letter issued on April 21, 1980.[7]

There is no dispute that Washam has fulfilled each of the procedural requirements of Title VII, and that this Court may properly exercise jurisdiction over this action. Penney insists, however, that it is beyond the power of this Court to grant plaintiff any of the relief he seeks.

## II.

Although both sides have placed the same affirmative defenses in issue, the opposing motions are not governed by the same legal standard. To grant summary judgment for defendant, I must conclude that there exists no genuine issue of material fact which if found favorably to the plaintiff would entitle him to relief. To reach that decision, I may consider "depositions, answers to interrogatories, and admissions on file together with ... affidavits" in addition to the pleadings. Rule 56(c), Federal Rules of Civil Procedure.

Plaintiff's Motion to Strike may be granted only if the well pleaded facts in Penney's answer are legally insufficient as defenses to Washam's claim. There is no provision for conversion of 12(f) motions to motions for summary judgment, as there is under Rules 12(b) and (c). *Krauss v. Keibler-Thompson Co.*, 72 F.R.D. 615, 618 (D.Del. 1976).

## III.

As its Seventh Affirmative Defense, Penney contends that *res judicata* and collateral estoppel prevent Washam from obtaining relief on his Title VII and Section 1981 claims. The undisputed facts of this case, however, demonstrate that neither doctrine creates such a bar.

---

5. Ex. B, Defendant's Reply Brief in Support of Motion for Summary Judgment, (Document No. 19).

6. Ex. C, Defendant's Reply Brief in Support of Motion for Summary Judgment, (Document No. 19).

7. Complaint, Ex. C at 3. (Document No. 2).

## A. Res Judicata

█ *Res judicata*, or claim preclusion, reflects the public interest in the efficient use of judicial resources and the energies of the parties by compelling joinder of claims arising from the same transaction. *See,* Restatement (2d) Judgments (Tentative Draft No. 5) § 48 (1978). A final judgment between the parties on one or more such claims bars relitigation of all claims which should have been brought in the earlier proceeding. *See,* Restatement (2d) Judgments (Tentative Draft No. 5) § 61 (1978). It is immaterial for purposes of *res judicata* whether the claim was in fact pursued in the other forum, F. James and G. Hazard, Civil Procedure (2d ed. 1977) § 11.8 at 540–41, or whether it was won or lost. *Smouse v. General Electric Co.,* 626 F.2d 333, 335 (3d Cir. 1980).

Upon first inspection, *res judicata* may seem applicable here. The NLRB judgment is final; the parties in interest identical; the transaction the same. Nevertheless, this case falls squarely within two exceptions to the doctrine of merger which require the contrary result. First, the jurisdiction of the NLRB is limited, and did not encompass Washam's racial discrimination claim. Second, the legislative history of Title VII, and its subsequent judicial construction make plain that Congress intended to authorize the splitting of race discrimination claims.

### 1. The NLRB Lacked Jurisdiction

The Administrative Law Judge expressly found that Bernard Washam was a "supervisor" within the meaning of Section 2(11) of the NLRA. He was, therefore, not an "employee" within the meaning of that Act. 29 U.S.C. § 152(3). His claim of unlawful discharge was before the Board only because he had refused to testify on Penney's behalf in the pending Mitchell hearing, and the Board has held that the employer's duty to refrain from coercion in connection with such a hearing extends to supervisors. *See* 29 U.S.C. § 158(a)(4).

█ Although the courts have recognized the NLRB's role in combatting racial discrimination in the workplace, *see e. g., Alexander v. Gardner-Denver Co.,* 415 U.S. 36, note 9 at 48, 94 S.Ct. 1011, note 9 at 1019, 39 L.Ed.2d 147 (1974); *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *United Packinghouse v. N.L.R.B.,* 416 F.2d 1126 (D.C.Cir.) *cert. denied,* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969); *Cargo Handlers,* 159 N.L.R.B. 321 (1966); *Guerra v. Manchester Terminal Corp.,* 498 F.2d 641, note 18 at 650, note 19 at 650–51 (5th Cir. 1974); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979 (D.C.Cir.1973), this rule is limited by the ambit of the NLRA. As the court wrote in *United Packinghouse, supra,* 416 F.2d at 1135:

> In order to hold that employer racial discrimination violates Section 8(a)(1) it must be found that such discrimination is not merely unjustified, but that it interferes with or restrains discriminated employees from exercising their statutory right to act concertedly for their own aid or protection, as guaranteed by Section 7 of the Act.

Thus, the NLRB's jurisdiction over race discrimination claims is predicated on the impact of the alleged discrimination on the enjoyment of rights secured to employees under Section 7 of the NLRA.[8] The absence of such an impact from a racially motivated discharge of a supervisor places such a discharge beyond the jurisdiction of the NLRB.

The settled principles of *res judicata,* as articulated in the proposed Restatement (2d) of Judgments, limit the general rule preventing splitting of claims:

> § 61.2(1) When...
>
> (c) [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations

---

**8.** *See also,* Note, Allocating Jurisdiction On Racial Issues, Between the EEOC and the NLRB:

A Proposal, 54 Corn.L.Rev. 943, 952–53 (1970).

on the subject matter jurisdiction of the courts ... and the plaintiff desires in the second action to rely on that theory....

Neither the NLRB nor the EEOC presented Washam with a forum in which it was possible for him to litigate both racial discrimination and unfair labor practice claims. He presented each to the appropriate agency. Under these circumstances the principle of merger bears no weight.

### 2. Title VII Permits the Pursuit of Multiple Remedies

■ Washam initially filed a complaint before the EEOC, charging Penney with racial discrimination. It was only a month and a half later that he filed with the NLRB. Even if claims of racial discrimination were properly before the NLRB as well, this concurrent jurisdiction is entirely consistent with the history and implementation of Title VII. In *Alexander v. Gardner-Denver Co., supra*, the Supreme Court held that an adverse decision in an arbitration proceeding pursuant to a collective bargaining agreement did not bar a suit under Title VII. *See also*, Meltzer, Labor Arbitration and Conflicting Remedies for Employment Discrimination, 39 U.Chi.L.Rev. 30, 43–45 (1971). Justice Powell, for a unanimous Court, wrote:

> The legislative history of Title VII manifests a congressional intent to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

415 U.S. at 48–49, 94 S.Ct. at 1019–1020.

The courts have applied *Alexander* to hold that the judgment of a state fair employment agency is not *res judicata* to a subsequent Title VII claim. *Smouse v.*

*General Electric Co., supra; Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1084 (8th Cir.) (collecting cases), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980).[9] Based upon the *Smouse* opinion and its reading of *Alexander*, I believe the Third Circuit Court of Appeals would hold that the judgment of the NLRB should not have a *res judicata* effect on Washam's Title VII claim.

A second limitation on the doctrine of merger, as expressed in the new Restatement, is that it should not apply when "it is the sense of [a statutory or constitutional scheme] that the plaintiff should be permitted to split his claim." Restatement (2d) Judgments (Tentative Draft No. 5, 1978) § 61.2(d). Here, it is the sense of the statutory scheme to make alternative forums available to a person alleging harm as a result of employment discrimination. I conclude that *res judicata* is unavailable to the defendant, as a matter of law. Summary Judgment is denied; the Motion to Strike this defense is granted.

### B. Collateral Estoppel

■ Unlike claim preclusion, issue preclusion or collateral estoppel bars relitigation of only those issues actually litigated in the prior proceeding and determined by the final judgment of a competent tribunal. The burden rests on the defendant to establish these elements. The little evidence now before the Court on this motion for summary judgment not only does not support, but effectively refutes this claim.

Plaintiff did include a conclusory allegation that he had been fired because of his race in the charge he presented to the NLRB. However, the ALJ's decision, affirmed in its entirety by the Board, contains no reference to race discrimination whatsoever. While defendant acknowledges this fact, it nevertheless urges that the ALJ

---

**9.** The only case to the contrary, *Sinicropi v. Nassau County*, 601 F.2d 60 (2d Cir. 1979) (per curiam), *cert. denied*, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1980) relied upon state *court* review of the agency determination, which is absent here, and concluded that a

previous decision regarding Section 1981 should be applied to Title VII without analyzing the distinctive history and purpose of the latter statute. Our Circuit has adopted a different rule, which I shall apply here.

must have found that Penney did not fire Washam because of his race in order to have concluded that it was guilty of an unfair labor practice. The foundation for this contention is *Wright Line, A Division of Wrightline, Inc.*, 251 N.L.R.B. 150, 1980 CCH NLRB Decisions ¶ 17,356 (1980), a recent case in which the Board adopted the "Mt. Healthy" test of causation in "dual motive" cases.[10]

■ The short answer to Penney's argument is that *Wright Line* changed the law and that the ALJ in Washam's case applied a different rule of causation.[11] But even if *Wright Line* reflected the law as it stood in 1978, Penney's conclusion would still be unsound. Under the Mt. Healthy standard, the ALJ could have ordered Washam reinstated based on findings (1) that his refusal to testify against Mitchell was "a motivating force" in Washam's discharge, and (2) Penney did not carry its burden of proving that it had an additional motive which would have caused his discharge in any event. The ALJ made finding (1), and concluded that the gun policy which Penney offered as its motive was merely a pretext for an unlawful discharge. Nothing in the *Wright Line* doctrine or in what the ALJ actually decided is necessarily inconsistent with Washam's present claim that race was "a motivating factor," or even that it was the dominant motive in Penney's decision to

fire him. It follows that Penney has failed to demonstrate that the issue posed here was actually litigated before and decided by the NLRB.

Additionally, for the reasons stated in Section III A, above, it would be inappropriate to apply collateral estoppel here even if the issue of race discrimination had been presented to the ALJ. The remedial goals of Title VII and its legislative history counsel against limiting claimants to a single forum. *See Smouse v. General Electric Co., supra* ; Section III.A.2 above. Accordingly, the Seventh Affirmative Defense shall be stricken in its entirety.

## IV.

Defendant also asserts that, as a matter of law, plaintiff is entitled to no relief under Title VII or Section 1981 because he has already received back pay of $7,381.98 and accrued interest for the period between his discharge and the date of his felony indictment.[12]

On its face, the Complaint seeks relief over and above that already conferred by the NLRB.[13] Plaintiff asks for reinstatement, exemplary damages and injunctive relief. The motion for summary judgment, therefore, rests on two propositions of law: Penney cannot be compelled to reinstate Washam as its Security Manager because of his intervening felony conviction.[14] Second,

10. The NLRB described the test as follows: First, we shall require that the General Counsel make a *prima facie* showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct. 1980 CCH NLRB Decisions ¶ 17,356 at 32,469.

11. Before *Wright Line*, the Board used the "in part" test. The Third Circuit approved a variation of the "in part" test in *Edgewood Nursing Center v. N.L.R.B.*, 581 F.2d 363, 368 (3d Cir. 1978):
   If two or more motives are behind a discharge, the action is an unfair labor practice if it is partly motivated by reaction to the employee's protected activity. . . .
   *See also, Wright Line, supra,* ¶ 17,356 at 32,-464–65. (tests adopted in other Circuits).

12. It is, of course, agreed that Washam is not entitled to a second recovery of the same back pay. *See Strozier v. General Motors Corp.*, 442 F.Supp. 475 (N.D.Ga.1977); *Pearson v. Western Electric Co.*, 13 FEP 1200 (D.Kan.), *aff'd*, 542 F.2d 1150, 13 FEP 1202 (10th Cir. 1976); *Flesch v. Eastern Pennsylvania Psychiatric Inst.*, 472 F.Supp. 798 (E.D.Pa.1979); B. Schlei & P. Grossman, Employment Discrimination Law (Supp.1979) 241.

13. From the record before me, I am unable to determine how much time elapsed between Washam's indictment and his incarceration. Washam may be able to prove that he should receive back pay for this interval, even if he is not reinstated.

14. Although the NLRB apparently concluded that Penney could not be required to reinstate Washam, for reasons heretofore articulated, that decision is not dispositive here.

under no circumstances may Penney's actions in this case give rise to exemplary damages or injunctive relief.

#### A. *Reinstatement*

■ The remedial objective of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). "Victims of discrimination are entitled to be restored to the economic position they would have occupied but for the unlawful conduct of employers." *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir. 1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). If plaintiff is able to prove that he was discharged because of his race, the burden falls on Penney to demonstrate that he may not now resume his old job. *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 804–5, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

■ The record on summary judgment contains nothing that would permit me to conclude that a felony conviction is an absolute bar to employment as a Security Manager, at Penney's or anywhere else. Before the NLRB, Washam did testify that he checked to determine if a prospective employee had a criminal record,[15] but at his deposition, he also testified that when he was hiring security personnel for Almart, he would consider applicants for employment so long as they had not been involved in a crime of violence.[16] Other courts have held that an absolute refusal to hire persons with convictions or a number of arrests is inconsistent with Title VII. *Carter v. Gallagher,* 452 F.2d 315 (8th Cir. 1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); *Gregory v. Litton Systems,* 316 F.Supp. 401 (C.D.Cal.1970), *aff'd,* 472 F.2d 631 (9th Cir. 1972). There is certainly no foundation for me to create such a bar as a matter of law. At trial, Penney may, of course, be able to establish that a convicted felon is unqualified to serve as its Security Manager because of the need for the holder of that job to testify as a witness in court, but it has not done so on the present record.

This case is complicated by the fact that Washam was incarcerated for several months, and was physically unable to fill his old position, when the NLRB directed that it be restored to him. It is entirely possible that Penney will be able to develop a record built on this fact which will demonstrate that it would be inequitable to grant Washam the equitable remedy of reinstatement. *See Williams v. Saxbe,* 12 E.P.D. ¶ 11,016 at 4763 (D.D.C.1976). But I am not willing to rule as a matter of law that his inability to resume employment at the close of the NLRB proceeding bars reinstatement as a remedy in this case. If he is to prove a racially motivated discharge, Washam would normally be entitled to reinstatement whatever incapacities he may have suffered during the pendency of the lawsuit. He should not be in a materially different position simply because he successfully pursued his NLRA remedy while prosecuting his Title VII claim.

Even if this Court were not authorized to order Washam reinstated, it would nevertheless have the power to grant him additional relief. If the proof at trial establishes that Penney engaged in retaliatory activity after Washam filed his EEOC complaint, he may recover punitive damages under Section 1981. *See Mitchell v. Chester County Farms Prison,* 426 F.Supp. 271, 275 (E.D.Pa.1976) (punitive damages available under Section 1983 when defendants have acted wilfully and in gross disregard for the rights of the complaining party). Because the record does not show that Washam is not entitled to further relief as a matter of law, defendant's motion for summary judgment is denied. Plaintiff's motion to strike is also denied.

---

**15.** Washam Deposition at 24–25. (Document No. 14).

**16.** Ex. A, Defendant's Reply Brief in Support of Its Motion for Summary Judgment. (Document No. 19).

## V.

■ Two[17] additional defenses were presented, but not stressed, in defendant's motion for summary judgment. First, Penney urges that "Plaintiff accepted the amount of back pay calculated by the NLRB. He is therefore barred from seeking any more back pay in this suit by the doctrines of accord and satisfaction and payment."[18] Plaintiff is not entitled to recover the same back pay twice, but he may be entitled to additional back pay if he prevails on his claim for reinstatement. The release which plaintiff executed on receipt of the NLRB back pay award specifically disavows any intention to forego the claims previously presented to the EEOC.[19] "To constitute an accord and satisfaction that which is offered must clearly be offered in full satisfaction of the claim in question and it must be so understood when accepted. (citations omitted)." *Union Bank v. Jones*, 411 A.2d 1338 (Vt.1980); *see also* 6 Corbin, *Contracts*, § 1277 at 117; *U. S. for use of Glickfeld v. Krendel*, 136 F.Supp. 276, 282 (D.N.J.1955). "[A]n explicit reservation of right will prevent the application of accord and satisfaction." *Simpson v. Norwesco, Inc.*, 442 F.Supp. 1102 (D.S.D.1977), *aff'd*, 583 F.2d 1007 (10th Cir. 1978). *See also, United States v. Hougham*, 364 U.S. 310, 312, 81 S.Ct. 13, 15, 5 L.Ed.2d 8 (1960), *rehearing denied*, 364 U.S. 938, 81 S.Ct. 376, 5 L.Ed.2d 8. Summary judgment upon this defense is denied, however it is properly raised within the corners of the pleadings and accordingly will not be stricken.

■ Neither can I agree that the doctrine of equitable estoppel prevents litigation of plaintiff's Title VII claim. Plaintiff filed his complaint with the EEOC before pursuing any remedies under the NLRA. Penney was aware of the EEOC grievance, and the subsequent EEOC determination of reasonable cause. Plaintiff did not misrepresent or conceal any material fact from Penney. To the contrary, Penney was, or certainly should have been, well aware of the ongoing race discrimination claim. Knowing concealment is a necessary element of equitable estoppel, *see e. g., U. S. ex rel. K & M Corp. v. A & M Gregos, Inc.*, 607 F.2d 44, 48 (3d Cir. 1979). *Rosenthal v. Nationwide Insurance Co.*, 486 F.Supp. 1018 (S.D.N.Y.1980); *Anthony v. Ryder Truck Lines, Inc.*, 466 F.Supp. 1287 (E.D.Pa.1979). It is not even alleged in this case. This defense shall be stricken.

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is denied in its entirety. The plaintiff's Motion to Strike Insufficient Affirmative Defenses is granted in part. The defenses predicated on the doctrines of waiver, estoppel, *res judicata* and collateral estoppel shall be stricken from the Answer pursuant to Rule 12(f).

---

**17.** The last defense which plaintiff moves to have stricken is that of waiver. Because the allegations in the Answer provide no basis for such a defense, it shall be ordered stricken.

**18.** Defendant's Brief in Opposition to Plaintiff's Motion to Strike Insufficient Affirmative Defenses (Document No. 12) at 17.

**19.** "Acceptance of this sum shall and will in no way or manner whatsoever prejudice, compromise, bar, settle, release or act in any other way as collateral estoppel or res judicata to any claims, complaint or right in law or equity I now have or ever had against the J. C. Penney Company, Inc. in any action now pending before or to be brought based upon racial discrimination, employment practices and policies during the period of time in question, including, but not limited to, EEOC charge no. 031771999."

Ex. A–1, Brief in Support of Motion to Strike Affirmative Defenses In Answer to Complaint. (Document No. 5). It would be difficult to imagine a more explicit reservation of rights.