**LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Plaintiff,**

v.

**WILLETT, INC., et al., Defendants.**

**No. 85 C 3421.**

United States District Court,
N.D. Illinois, E.D.

July 19, 1985.

---

Sherman Carmell, Carmell, Charone Widmer & Mathews, Ltd., Chicago, Ill., for plaintiff.

Harry Sangerman, McDermott, Will & Emery, Richard J. Cochran, Tenney & Bentley, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Local 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen &

Helpers of America ("Local 705") charges The Willett Company ("Company"), Willett, Inc. ("Willett"), Willett Interstate System, Inc. ("Interstate") and Railhead Cartage, Inc. ("Railhead") violated the collective bargaining agreement ("CBA") between Local 705 and Company by subcontracting cartage work out to persons not represented by Local 705. Willett, Interstate and Railhead (collectively "Movants") now seek to be dismissed under Fed.R.Civ.P. "Rule" 12(b)(1) and 12(b)(6). For the reasons stated in this memorandum opinion and order, their motion is denied.

### Facts [1]

Willett is the sole owner of the other defendants. All defendants are affiliated enterprises with common ownership and management, centralized control of labor relations and sharing of equipment, employees and other assets. Company and Local 705 are signatories to a CBA covering local cartage drivers, under which cartage work performed by or assigned to Company employees cannot be subcontracted out or assigned to any other drivers. None of the Movants is a CBA signatory.

In November 1984 Movants did subcontract out cartage work that belonged to Company's employees. Some or all that work (the Complaint is unclear) was contracted out to Railhead, whose stock Willett had purchased "to circumvent or evade" the CBA.

Local 705 asserts this Court has jurisdiction under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Complaint Count I's prayer for relief:

requests the court to declare defendants a single employer or joint employer for purposes of this action and to grant such relief as is appropriate, including damages.

Count II's prayer:

requests the court to declare Railhead an alter ego of The Willett Company for

---

**1.** As always on a Rule 12(b)(6) motion, the well-pleaded factual allegations of the Complaint are accepted as true, with all reasonable inferences drawn in Local 705's favor. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984). Absent any added factual submissions, the same assumptions will be made for Rule 12(b)(1) purposes as well.

purposes of this action and to grant such relief as is appropriate, including damages.

Movants respond:

1. This Court has no jurisdiction over them under Section 301 because they are not signatories to the CBA.

2. All issues raised by Local 705's Complaint are within the exclusive jurisdiction of the National Labor Relations Board ("NLRB" or simply the "Board"). Those contentions will be dealt with in turn.

### Section 301 Jurisdiction over Non-Signatories

■ Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties.

Movants' contention of a lack of Section 301 jurisdiction because they are not signatories or parties to the CBA really begs the question. Plainly the gravamen of the Complaint is that Movants *are* to be treated as parties to the CBA by virtue of their identity with Company.

Courts considering whether defendants are a "single employer"[2] have regularly exercised jurisdiction over all the defendants to resolve that issue. *Carpenters Lo-*

cal No. 1846 of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Pratt-Farnsworth, Inc., 690 F.2d 489 (5th Cir.1982), cert. denied, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1299 (1983); Brotherhood of Teamsters, Local No. 70 v. California Consolidators, Inc., 693 F.2d 81 (9th Cir.1982) (per curiam), cert. denied, —— U.S. ——, 105 S.Ct. 263, 83 L.Ed.2d 199 (1984). That applies to the alter ego count too. Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 23–24 (1st Cir. 1983). Movants have failed to cite even one single employer or alter ego case holding the contrary.[3]

### Section 301 Jurisdiction over Representational Issues

But scotching that spurious jurisdictional issue shifts attention to a real one—that stemming from the nature of the issues raised by the Complaint:

1. Movants claim the relief sought by Local 705 requires a decision as to representational issues within NLRB's exclusive jurisdiction.

2. Local 705 counters this Court need dispose of only the narrow single employer issue for the time being, leaving consideration of the representational issues for another day.

Evaluation of those arguments must take account of the dual nature of the prayer for relief—as already indicated, Count I asks (a) a declaratory judgment on the single employer question and (b) appropriate relief, including damages.[4]

Conventional wisdom teaches that the Declaratory Judgment Act, 28 U.S.C.

---

**2.** Throughout the rest of this opinion the term "single employer" (even though it is of course used as a term of art and not literally), as well as the term "alter ego," will be used without quotation marks.

**3.** Movants do point to two decisions by our Court of Appeals, *Loss v. Blankenship,* 673 F.2d 942 (7th Cir.1982) and *Baker v. Fleet Maintenance, Inc.,* 409 F.2d 551 (7th Cir.1969). But those cases simply insist that Section 301 enforcement run against an "employer" (as the statute itself reads), while this case inquires into the substantive content of that term. Indeed *Baker,* 409 F.2d at 554, as adhered to in *Loss,*

673 F.2d at 946, actually suggests the propriety of such an inquiry. *Baker* speaks not only of "a party to the collective bargaining agreement" but also to "participation in the collective bargaining agreement." Essentially the "single employer" and "alter ego" contentions advanced by Local 705 are that the corporations that have not put pen to paper and signed the CBA are nonetheless participants in it under all the circumstances.

**4.** This opinion will treat with Count I at length before turning to Count II, which requires much shorter discussion.

§ 2201 et seq., is not itself a source of jurisdiction. But once jurisdiction has otherwise been conferred (in this case by Section 301(a)), the Declaratory Judgment Act clearly empowers this Court to adjudicate the single employer issue by a declaration on that score.

That however is only part of the story, for it is equally clear no other relief can flow simply from a determination that Movants and Company are a single employer. Before Movants can be held bound to the CBA, Local 705 must establish *both* the existence of that single-employer group *and* the propriety of a single bargaining unit comprising the employees of the same group (Movants and Company). *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers, AFL–CIO,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (per curiam); *Pratt-Farnsworth,* 690 F.2d at 505, 507; *California Consolidators,* 693 F.2d at 82–84; *NLRB v. Don Burgess Construction Corp.,* 596 F.2d 378, 386 (9th Cir.1979); *Local 17, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Coast Cartage Co.,* 103 LRRM 3053, 3054 (D.Colo.1980). *Pratt-Farnsworth,* 690 F.2d at 507 explained the reason for that two-stage inquiry:

> It is clear that the primary motivation of the Board in making an independent unit determination in a single employer case is to protect the rights under section 7 of the NLRA, 29 U.S.C. § 157, of the employees of each of the subentities constituting the single employer to bargain collectively with representatives of their own choosing.
>
> \*     \*     \*     \*     \*     \*
>
> Further, as will be shown in Part II.C.8 of this opinion, even the fact that the union employer and the union have stipulated in the agreement as to the appropriate unit will not preclude an inquiry by the Board into the appropriateness of the unit comprising the employees of both the union and nonunion employers.

What is really at issue here is only one of those two inquiries: the single employer question. And every reported case that has squarely addressed that subject has held a district court may resolve that question in a Section 301 suit. See, e.g., *Northwest Administrators, Inc. v. Con Iverson Trucking, Inc.,* 749 F.2d 1338, 1340 (9th Cir.1984) and cases there cited. Where the Courts of Appeal are split is at the second level of inquiry: whether a district court has jurisdiction under Section 301 to resolve bargaining unit issues. See *California Consolidators,* 105 S.Ct. at 263–64 (White and O'Connor, JJ. dissenting from denial of certiorari). Our own Court of Appeals has not addressed that question.

That second-level split stems from the potentially conflicting jurisdictional allocations of the LMRA and the predecessor National Labor Relations Act ("NLRA" or simply the "Act"). NLRA §§ 7 and 8, 29 U.S.C. §§ 157 and 158 (as amended by LMRA), grant employees the right to organize and prohibit unfair labor practices. It has long been established the NLRB has exclusive original jurisdiction over cases arising under those sections. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). On the other hand, Section 301 conferred federal court jurisdiction for the enforcement of collective bargaining agreements.

But unfair-labor-practice cases and breach-of-collective-bargaining-agreement cases are heavily overlapping sets: Many if not most activities that constitute breaches of bargaining agreements are also unfair labor practices. Thus district courts adjudicating Section 301 claims frequently face issues normally decided by the NLRB in the NLRA §§ 7 or 8 context. Of course that fact alone does not deprive a federal court of jurisdiction. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). Nonetheless courts have typically declined to exercise jurisdiction (which they possess under the literal language of Section 301) as to those representational issues that most require exercise of the NLRB's spe-

cial expertise and discretion. Though such declined cases may speak in terms of want of "jurisdiction," it is unimportant whether that characterization is conceptually accurate. What matters is that courts simply will not take and decide such cases. *Northwest Administrators*, 749 F.2d at 1339; *Local Union 204 of the International Brotherhood of Electrical Workers, Affiliated with the AFL–CIO v. Iowa Electric Light and Power Co.*, 668 F.2d 413, 419 (8th Cir.1982).

Determination of appropriate bargaining units is the paradigmatic instance of such nonexercise of judicial jurisdiction. NLRA § 9(b), 29 U.S.C. § 159, delegated that issue entirely to the discretion of the Board:

> The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof....

Other than the general policies animating the LMRA, the statute provides no guidelines whatever for the Board in making unit determinations.

Little wonder, then, that of all the so-called representational issues the Board decides, that of appropriate bargaining units has generated the greatest judicial deference to the Board. *Local No. 3–193 International Woodworkers of America v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1298 (9th Cir.1980). In the LMRA context the benchmark case is *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), which involved review of an NLRB determination that (1) foremen are protected under the NLRA and (2) their appropriate bargaining unit is the entire class of foremen working for a single employer. On the latter question the Court said (*id.* at 491–92, 67 S.Ct. at 793):

> Section 9(b) of the Act confers upon the Board a broad discretion to determine appropriate units.

*    *    *    *    *    *

The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed. While we do not say that a determination of a unit of representation cannot be so unreasonable and arbitrary as to exceed the Board's power, we are clear that the decision in question does not do so. That settled, our power is at an end.

That should be contrasted with the Court's teaching (also under the LMRA) on the single employer issue. In *South Prairie* the Board (sub nom. *Peter Kiewit*, 206 N.L.R.B. 562 (1973)) had decided that question in the negative, so it did not reach the bargaining unit issue. On review, the Court of Appeals for the District of Columbia reversed the Board on the single employer issue and then decided the proper bargaining unit as an original matter, 518 F.2d 1040 (D.C.Cir.1975). Then the Supreme Court *affirmed* on the first question but remanded as to the bargaining unit determination on the ground that the Court of Appeals had no power to decide that issue as an initial matter (425 U.S. at 805–06, 96 S.Ct. at 1844–45) (citations omitted):

> Whether or not the Court of Appeals was correct [in its reasoning on the bargaining unit issue], we think that for it to take upon itself the initial determination of this issue was "incompatible with the orderly function of the process of judicial review." ... Since the selection of an appropriate bargaining unit lies largely within the discretion of the Board, whose decision, "if not final, is rarely to be disturbed," ... we think the function of the Court of Appeals ended when the Board's error on the "employer" issue was "laid bare."

Though *South Prairie* is binding precedent only in the NLRA framework, most post-*South Prairie* courts have understandably drawn on its declaration of policy to decline jurisdiction over bargaining unit

issues in Section 301 suits. See, e.g., *Iowa Electric Light*, 668 F.2d at 416–20; *Ketchikan Pulp*, 611 F.2d at 1301; *Coast Cartage*, 103 LRRM at 3054. Only the Court of Appeals for the Fifth Circuit in *Pratt-Farnsworth*, 690 F.2d at 521–22 has upheld the power under Section 301 to decide the appropriate bargaining unit and other "collateral" issues subsidiary to enforcement of a collective bargaining agreement. *Pratt-Farnsworth, id.* at 513–17 held *South Prairie* (which it called by its NLRB name, *Peter Kiewit*) was not controlling in a Section 301 suit, taking its direction instead from:

1. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), which held federal courts empowered under Section 301 to create a federal common law of labor relations "which the courts must fashion from the policy of our national labor laws";

2. *Hines*, 424 U.S. at 562, 96 S.Ct. at 1055, which held:

The strong policy favoring judicial enforcement of collective-bargaining contracts [is] sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved [is] arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board;

and

3. *Connell Construction Co. v. Plumbers Local Union No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975) and *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), each of which held a district court had jurisdiction in a suit arising under independent federal laws to decide collateral issues requiring an interpretation of NLRA § 8(e).

*Pratt-Farnsworth* drew from those cases the conclusion that a district court may resolve the proper bargaining unit in a Section 301 suit, "at least in the absence of a previous or pending determination by the Board" (690 F.2d at 521).[5] Though it has substantial force, the *Pratt-Farnsworth* analysis is not ultimately persuasive. Granted, the cases on which it relies support a district court's Section 301 exercise of jurisdiction over a broad range of collateral issues otherwise within Board domain. Certainly *Lincoln Mills* and *Hines* emphasize the independent force of Section 301 and the importance of not allowing deference to the NLRB to swallow the federal courts' own enforcement mission under the LMRA.

But the power of district courts to decide issues that also implicate LMRA §§ 7 and 8 does not justify the entire usurpation of Board functions. And the representational concerns inherent in bargaining unit determinations are at the very core of the Board's own powers. *Ketchikan Pulp*, 611 F.2d at 1298; *Iowa Electric Light*, 668 F.2d at 418–20.

As *Packard* stressed, the Act provides no guidelines to courts for their carving out of appropriate bargaining units. Congress expressly relegated that function to the discretion and special expertise of the Board. It goes without saying one tribunal is incapable of exercising another tribunal's discretion.

Were courts indiscriminately to determine all representational issues, they would subvert the Board's special status under the Act. As *Iowa Electric Light*, 668 F.2d at 420 and even *Pratt-Farnsworth*, 690 F.2d at 516 n. 11 recognized, nearly any collective-bargaining related issue can be cast in terms of breach of contract as opposed to unfair labor practice. Forum-shopping litigants could thus establish the courts as primary arbiters of representational issues. Such a prospect

5. *Pratt-Farnsworth,* 690 F.2d at 515–16 n. 11 did acknowledge the doctrine of primary jurisdiction, under which a court with jurisdiction over a dispute may nevertheless defer that issue to an administrative agency with special expertise and a special stake in the issues. Because the parties had not raised that issue, *Pratt-Farnsworth* declined to decide whether it should apply that doctrine.

obviously risks usurpation of the NLRB's role. But more importantly that threat is not only structural but substantive, for it would create doctrinal chaos, as inexperienced courts decided discretionary matters for which the Act provides little or no guidance.

■■■ This Court therefore follows the Eighth and Ninth Circuits, rather than taking the Fifth. It holds no Section 301 jurisdiction exists to resolve representational issues by deciding appropriate bargaining units. That holding precludes this Court from granting the monetary and "other" relief sought in Count I.

In sum, this Court *has* jurisdiction to decide the threshold single employer question. It *lacks* power to ·make an initial bargaining-unit judgment—but Local 705 has not directly asked for that in this action.

### Exercise of Jurisdiction for Declaratory Relief

■■ That set of conclusions poses a different question—not one of jurisdiction, but rather one of its possible discretionary nonexercise. In terms of Count I, the inquiry is whether this Court's inability to confer all the relief asked there should cause a deferral of *all* issues to the Board. Local 705 urges a "no" answer to that question, while Movants really fail to address the possibility of resolving the single employer issue here and the bargaining unit issue elsewhere.

This Court does not draw on a clean slate in drafting its answer to that inquiry. Guidance is afforded by both *Northwest Administrators* and *California Consolidators.*

In *Northwest Administrators* the assignee of several employee trust funds sued an employer under Section 301 and ERISA. Liability was predicated on the employer's being the alter ego of the signatory to a collective bargaining agreement. At the district court level the action was dismissed under the primary jurisdiction doctrine (see n. 5) because resolution of the alter ego dispute would ultimately require a determination of the appropriate bargaining unit. But the Court of Appeals reversed and ordered the district court to decide the non-representational issues (749 F.2d at 1340):

> Before considering the existence of potential representational issues, the district court should have decided two potentially dispositive questions which do not concern representation. First, the court should have determined whether the Con Iverson Trucking, Inc. was in fact a successor or alter-ego which could be bound by the agreement entered by the Con Iverson sole proprietorship. District courts have jurisdiction under section 301 to make such determinations. *See Roberts v. Ayala*, 709 F.2d 520 (9th Cir.1983) (per curiam); *California Consolidators*, 693 F.2d at 83. Second, if it concluded the corporation could be bound as a successor, the court should have determined whether the corporation ever effectively repudiated the agreement. Absent an effective repudiation, the trust funds could recover even if the union did not represent a majority of the employees in an appropriate unit. *Jim McNeff, Inc. v. Todd* [461 U.S. 260], 103 S.Ct. 1753 [75 L.Ed.2d 830 (1983)]. We remand to the district court for consideration of these issues.

*California Consolidators* bears even more directly on this case. There as here a union sought a Section 301 declaration an employer was bound by a collective bargaining agreement because it and the signatory company were a single employer. As in *Northwest Administrators*, the district court dismissed the entire action for lack of jurisdiction because of the bargaining unit issue it would ultimately have to face. There too the Court of Appeals disagreed, remanding for "further proceedings and an evidentiary hearing" as to whether the two companies were a single employer (693 F.2d at 84).

Although neither *Northwest Administrators* nor *California Consolidators* articulated reasons for their remands, their

approach is preferable to shunting this entire case onto the NLRB. Any federal court considering a stay or abstention must begin from the premise that "[a]bstention from the exercise of federal jurisdictional is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). In the same vein, *Director, Office of Workers' Compensation Programs, United States Department of Labor v. Peabody Coal Co.*, 554 F.2d 310, 323 (7th Cir.1977) quoted *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909):

> When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction....

In this situation, the presumption in favor of exercise rather than nonexercise of jurisdiction is reinforced by the strong congressional intent expressed in Section 301 to give the victims of labor contract breaches access to the federal courts. Though this Court cannot give full relief to Local 705, it can grant at least the declaratory judgment sought in Count I.

Two considerations are arguably countervailing. They are not (singly or in combination) strong enough to outweigh the presumption in favor of exercising jurisdiction.

First, it is true the Board may have more experience than this Court in deciding whether multiple entities are a single employer. But the cases already discussed plainly teach that issue is:

1. within the competence of district courts; and

2. not among the representational issues that call significantly on the special expertise or discretion of the Board.

Second, it is possible the adjudication of one issue here and the second issue before the NLRB could cause some overlapping. But there is no way to predict at this early stage whether resort to the Board will be necessary at all. If this Court resolves the single employer claim *against* Local 705, Count I will be disposed of entirely. Neither the Board nor anyone else would have to decide the appropriate bargaining unit. Any assertion at this stage that abstention in favor of the NLRB would be more economical (or how much so) is entirely speculative.

### Alter Ego Issue

No difficulty is posed by Count II in jurisdictional terms. This Court unquestionably has jurisdiction to resolve the alter ego count in its entirety. *Northwest Administrators*, 749 F.2d at 1340; *Local Union No. 59, International Brotherhood of Electrical Workers, ALF–CIO v. Namco Electric, Inc.*, 653 F.2d 143, 146–47 (5th Cir.1981).

■ Unlike single employer cases, alter ego cases generally do not require a separate determination of the appropriate bargaining unit. Finding one company to be the alter ego of a labor contract signatory is alone sufficient in most cases to bind that company to the agreement. *Penntech Papers*, 706 F.2d at 24; *Pratt-Farnsworth*, 690 F.2d at 508–09. At most the only additional inquiry that might be made is the "far more limited determination whether the stipulated unit is repugnant to any policy embodied in the NLRA" (*id.* at 509).

■ No reason has been suggested, and this Court is aware of none, for nonexercise of its jurisdiction over the alter ego claim in all its aspects. And that in turn fortifies the conclusion already reached as to Count I. Because:

1. this Court may (and should) adjudicate the alter ego count and grant any requested relief; and

2. the alter ego inquiry overlaps materially with the inquiry whether Movants and Company are a single employer,

judicial economy will be well served by adjudication of the single employer issue as well in this Court.

### Conclusion

This Court has, and will exercise, its jurisdiction over both counts of the Complaint.

Only if and when Local 705 obtains a favorable determination on the single employer issue need this Court face the issue whether to leave determination of the bargaining unit issue to the NLRB. Movants' motion to dismiss is denied, and they are ordered to answer the Complaint on or before July 31, 1985.