**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougall, trustee, Plaintiffs,**

v.

**OLD DUTCH FOODS, INCORPORATED, a Minnesota corporation, Defendants.**

No. 94 C 3738.

United States District Court, N.D. Illinois, Eastern Division.

June 25, 1997.

**1294**

Margaret Mary Fahrenbach, Robert Anthony Coco, Patrick J. Connor, Central States Law Dept., Rosemont, IL, Albert M. Madden, Central States Law Dept., Des Plaines, IL, for plaintiffs.

Patricia J. Hill, Edward B. Miller, Ronald J. Kramer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, and Howard McDougall move the court to enter summary judgment on their behalf. Defendant Old Dutch Foods, Inc. moves the court to enter summary judgment on its behalf, under Rule 56 of the Federal Rules of Civil Procedure. For reasons set forth below. the court denies both motions.[1]

### Background

Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund" or "Central States") brought this action under §§ 502(e)(1) and 515 of ERISA, 29 U.S.C. § 1132; 29 U.S.C. § 1145, against Old Dutch Foods, Inc. ("Old Dutch"). The Pension Fund claims that Old Dutch has not met its obligation to contribute to the pension fund on behalf of certain Old Dutch employees. Old Dutch's obligation to contribute to the fund is defined by the terms of the collective bargaining agreement ("Agreement") negotiated between Old Dutch and the International Brotherhood of Teamsters Local 471.

Old Dutch, with headquarters in St. Paul, Minnesota, produces and distributes snack food products to grocery stores and others. The route driver salespersons who work in respective territories in the State of Minnesota are represented by the Local 471 chapter of the International Brotherhood of Teamsters. Their employment relationship with Old Dutch is governed by a collective bargaining agreement that has been in effect since at least 1984. The Agreement describes the covered unit of employees as follows:

> The employer recognizes Local 471 as the sole collective bargaining agent for the classification covered by this agreement within the territory now serviced by the employees of the company who are now within the bargaining unit as defined by the letter of January 14, 1969 to the union over the signature of E.C. Aanenson, Vice President of the employer.

(Stip. ¶ 5.) [2]

The reference to a 1969 letter deals with a clarification of the bargaining unit stemming from changes made in the employer's operation in 1968. In 1968, Old Dutch moved its plant from downtown Minneapolis to Roseville, Minnesota, a suburb of St. Paul. As a result of this move, the company was transferred from the jurisdiction of one Teamster local union to a different Teamster local union. Therefore, certain route drivers who had been members of the union were working outside of the defined geographical area covered by the bargaining unit. (Stip. ¶ 10.) To clarify who was still eligible for continued pension coverage notwithstanding the change, the employer wrote the 1969 letter referenced above stating:

---

1. Until recently, the court believed that this matter had been settled and that this opinion had been issued. When the court became aware that the matter had not settled, the opinion issued immediately.

2. Both Central States and Old Dutch have filed a Joint Stipulation of Facts that will be cited as "Stip.".

For the purpose of clarification we want to set forth in this letter the territory which is actually covered by the Agreement so that there can be no problem in the future. As you know, the old contract by its literal terms would not have included in the City of St. Paul or other suburbs of the City of St. Paul, so that you will find we have changed the second paragraph of the new contract to refer to this letter which will specify the territory covered as follows:

1. All city routes in the Twin City areas are clearly covered.
2. Feeder line routes now operated by McFarlane in Rochester, Uppman in Worthington, Carlson in Faribault, Westerman in New Prague, Krueger in Mankato, and Korpi in Rush City are covered.

(Stip 5.)

After the execution of this letter, Old Dutch continued to make contributions to the individuals specified in section 2 of the 1969 letter. However, as certain of those individuals left the company, they were replaced by others—some of whom Old Dutch started and has continued to make contributions to the fund and others for whom Old Dutch has not made contributions. Therein is the essential dispute of the parties. Old Dutch contends that the intent of the foregoing letter was to apply the collective bargaining unit to named individuals while the Pension Fund contends that the intent was to apply the collective bargaining agreement to designated routes.

In 1987, Central States audited Old Dutch for the period of 1984 to 1986 and decided that contributions were not due on 90 previously non-reported drivers. In 1993, Central States audited Old Dutch for the period of 1990 to 1992. During this audit the 1969 letter was reviewed. Based on this letter Central States claims that it has not received contribution to the find for 14 drivers. These 14 drivers are responsible for routes designated in the 1969 letter.

In April, 1994 Old Dutch petitioned the National Labor Relations Board ("NLRB"), under Section 9(c) of the National Labor Relations Act, for a clarification of its bargaining unit. On May 20, 1994 the Regional Director of the NLRB issued a decision and order with respect to the petition. He stated: "in view of the historical exclusion of the route driver sales employees in Rochester, New Prague, Mankato and Route 142 in Faribault, it is unnecessary to clarify the unit to exclude those employees." (Stip ¶ 21.) Specifically:

[It is not necessary] to determine which of the parties' interpretations of the January 14, 1969 [letter] is correct or whether Carlson's successor in Faribault was inadvertently included in the unit. Irrespective of what the parties had originally intended or any inadvertence on the Employer's part, the investigation established that the employees who succeeded McFarlane, Westerman, and Krueger have been consistently excluded from the recognized unit at least ten years; the employee who has succeeded Carlson in route 84 in Faribault has been included in the recognized unit for approximately 16 years; and route 142 in Faribault has been excluded from the unit since its inception. Accordingly, in view of the historical exclusion of the route driver sales employees in Rochester, New Prague, Mankato and route 142 in Faribault, it is unnecessary to qualify the unit to exclude those employees. Moreover, it would be inappropriate to clarify the unit to exclude 84 in Faribault where, as here, the route has been historically included in the unit, there is a current collective bargaining agreement and the Employer does not contend that it reserved the right to seek exclusion during negotiation for that agreement.

(Stip ¶ 21).

Old Dutch and Teamsters Local Union 471 were the parties to the petition before the NLRB. The Pension Fund was not a party to the NLRB action.

### Motion for Summary Judgment

A court renders summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law" Fed.R.Civ.P. 56(c). Conversely, the court does not render summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, a court ruling on a motion for summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511.

On a motion for summary judgment, the movant "bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts demonstrating that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). In determining whether a genuine issue of material fact precludes summary judgment, the court reviews the evidence and draws all inferences "in the light most favorable to the nonmovant." *Id.;* Federal Deposit Ins. Corp. v. Knostman, *966 F.2d 1133, 1140 (7th Cir.1992).*

### Analysis

### I. Jurisdiction of the District Court

The primary jurisdiction of the National Labor Relations Board in particular areas of labor management relations law is well-established. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242–44, 79 S.Ct. 773, 777–79, 3 L.Ed.2d 775 (1959). However, for an issue to fall under the Board's primary jurisdiction, the issue must be subject to section 7 or 8 of the National Labor Relations Act ("NLRA"). *See Id.* at 245, 79 S.Ct. at 779–80. ("When an activity is arguably subject to Section 7 or Section 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."); *DeSantia-*

*go v. Laborers Int'l Union, Local No. 1140*, 914 F.2d 125, 129 (8th Cir.1990) (Although the Garmon directive has been refined somewhat in subsequent cases, it remains valid today).

■ However, this action is not subject to Section 7 or Section 8 of the NLRA. This action is brought under Section 502(e)(1) and 515 of ERISA. Therefore, the court must determine whether Section 502(e)(1), 29 U.S.C. § 1132(e)(1), grants jurisdiction to the NLRB or the district court. Section 502(e)(1) states:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have *exclusive* jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Under 502(e)(1) of ERISA, federal courts have exclusive jurisdiction over trustee suits to enforce an employer's § 515 contractual obligation to pay delinquent contributions. 29 U.S.C. § 1145; *See e.g., Martin v. Garman Const. Co.*, 945 F.2d 1000, 1003 (7th Cir.1991), *cert. denied*, 502 U.S. 1122, 112 S.Ct. 1244, 117 L.Ed.2d 476 (1992)(NLRB's decision that the employer had not committed an unfair labor practice does not preclude district court from later finding that the employer faced liability under ERISA, 29 U.S.C. §§ 1131, 1145); *New Bedford Fishermen's Welfare Fund v. Baltic Enterprises, Inc.*, 813 F.2d 503, 505 (1st Cir.1987), *cert. denied*, 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 234 (1988)(this jurisdictional grant in § 502 is an exception to the general rule that federal courts must always defer to the NLRB).

■ Furthermore, in order to enforce the contractual obligation of the employer under §§ 502(e)(1) and 515 the district court must be able to determine which employees are covered by the collective bargaining agreement. Central States' claim is a typical action to collect delinquent contributions under ERISA. Liability to the pension fund

turns on the district court's construction of two agreements—the collective bargaining agreement and the trust agreement. In this context the Board lacks jurisdiction to consider the ERISA claim. Accordingly, the NLRB does not enjoy primary jurisdiction as to the ERISA collection issue in this case. *See Garman* 945 F.2d at 1006.

Old Dutch contends that summary judgment is appropriate because the district court's jurisdiction is preempted by the NLRA. Old Dutch cites several cases that state that federal courts generally do not have jurisdiction over representational issues, such as who is included in the "collective bargaining unit." *See i.e., Local 703, Int'l Brotherhood of Teamsters v. Kennicott Bros.*, 725 F.2d 1088 (7th Cir.1982); *Local No. 3–193 International Woodworkers of America v. Ketchikan Pulp Company*, 611 F.2d 1295 (9th Cir.1980); *Local 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Willett*, 614 F.Supp. 932 (N.D.Ill.1985). Old Dutch argues that this court does not have jurisdiction to determine what makes up the collective bargaining unit. It states this question is reserved under the NLRA for the NLRB. However, in the ERISA context, this argument is misplaced.

The cases cited by Old Dutch to support its position that the NLRB has primary jurisdiction are distinguishable from this case. The Seventh, Eighth and Ninth Circuits have held that Congress did not intend for the district courts to have initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units. *See Kennicott* Bros., 725 F.2d at 1088; *Ketchikan Pulp Company*, 611 F.2d at 1295; *Willett*, 614 F.Supp. at 932 (Shadur, J.). These claims were brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 or in relation to an arbitration dispute, rather than Section 502(e)(1) of ERISA. Section 301 does not confer primary jurisdiction on the district court as does Section 502(e)(1). *See* 29 U.S.C. § 185; 29 U.S.C. § 1132(e)(1). Fur-

thermore, if the dispute relates to contract interpretation, as it does in this case, the district courts have the ability to decide the issue even if the issue relates to a determination of the collective bargaining unit. *See Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190, 202, 111 S.Ct. 2215, 2223, 115 L.Ed.2d 177 (1991)(Although the Board has occasion to interpret the collective bargaining agreement in the context of unfair labor practice adjudication, the Board is neither the sole nor primary source of authority in such matters. Arbitration and courts are still the principal source of contract interpretation).[3]

## II. Res Judicata

Old Dutch argues that the NLRB has already made a determination regarding the collective bargaining unit; therefore, this court is precluded from deciding the issue. However, this court finds the NLRB ruling does not restrict the court's authority to resolve the ERISA claim.

### A. Claim Preclusion

■ This court must first address the theory of res judicata. Res judicata, or claim preclusion, bars relitigation of a claim that a party raised or could have raised in a prior adjudication. The Supreme Court has held that agency adjudications of a factual matter can be res judicata in later proceedings. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)(superseded by statute). However, in *Martin v. Garman Construction Co.*, the court held that the NLRB lacks jurisdiction to consider an ERISA claim. 945 F.2d at 1003–06. A fiduciary may bring enforcement claims under ERISA only in federal court. 29 U.S.C. § 1132(e)(1) (1988). Because the NLRB lacked jurisdiction, the claim under ERISA did not merge into the earlier proceeding. Restatement (Second) of Judgments § 26(1)(c); *Garman*, 945 F.2d at 1003. Therefore, Old Dutch's claim must fail under

---

**3.** If the representational issue involves devising a remedy for an unfair labor practice that does not involve a contract dispute, the NLRB does have primary jurisdiction. *See Local Union 1395, Int'l Brotherhood of Electrical Workers v. NLRB,* 797 F.2d 1027, 1030–31 (D.C.Cir.1986).

this theory because the NLRB lacked jurisdiction to consider the ERISA claim.

## B. Issue Preclusion

■ The other theory the court must consider is collateral estoppel. Old Dutch argues that because the NLRB has made a determination of what employees make up the collective bargaining unit, the Pension Fund should be precluded from relitigating the issue. Collateral estoppel prohibits relitigating an issue of fact or law when the issue is actually litigated, determined by a final judgment and essential to the judgment of the prior tribunal. Restatement (Second) of Judgments § 27; *Garman*, 945 F.2d at 1003. Agency adjudications are afforded collateral estoppel effect, provided appropriate safeguards are met. *Garman*, 945 F.2d at 1003. However, as a matter of due process, collateral estoppel can be used to bind only those persons who were parties or who are in privity with parties to the prior proceeding. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979).

■ In enacting ERISA, Congress expressly recognized that the "continued well-being and security of millions of employees and their dependents are directly affected by these plans", and declared that the express policy of the Act is to protect "interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by ... establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *See Laborers Health and Welfare Trust Fund for Northern California v. Kauf-*

*man & Broad of Northern California, Inc.*, 707 F.2d 412, 416 (9th Cir.1983). Thus, pension plan trustees must have a forum in which to enforce trust obligations. The Pension Funds should not be forced to rely on the NLRB's decision, where the Fund was not a party to the proceeding and where the Board's jurisdiction cannot be invoked by the trustees and is not likely to be invoked by other interested parties. *Id.*

This court finds that the NLRB's prior ruling does not preempt this court's ruling on the ERISA claim under Sections 502(e)(1) and 515. The trustee was not a party to the earlier action, nor could the trustee be considered in privity with the union as a matter of law by virtue of the divergent responsibilities of pension fund trustees and union officials and the lack of an agency relationship.

Furthermore, in this case, the NLRB determined who is part of the collective bargaining unit based on Old Dutch's previous conduct, instead of looking to the actual terms of the collective bargaining agreement. Collateral estoppel does not preclude this court from re-examining the issue and making a determination based on ERISA principles. *See Garman* 945 F.2d at 1004. The NLRB's ruling that the agreement did not include route drivers based on Old Dutch's past performance does not preclude this court from interpreting the agreement to determine who is actually included in the collective bargaining unit.[4]

## III. The Collective Bargaining Agreement

Central States and Old Dutch Foods dispute the portion of the collective bargaining agreement that states: "[f]eeder line routes now operated by McFarlane in Rochester,

---

**4.** The case cited by Old Dutch, *United Association of Journeymen and Apprentices v. Valley Engineers, can be factually distinguished from this case. 975 F.2d 611 (9th Cir.1992). In* United Association of Journeymen, a fringe benefit fund petitioned the federal district court under ERISA and Section 301 of the NLRA for collection of funds. The Court of Appeals held that the action could not go forward stating: Letting the suit go forward would have produced conflicting or redundant judgments and a great deal of wasted effort and expense ... Once the Regional Director's Report became final, the union's suit

amounted to a collateral attack on that determination. 975 F.2d at 615. This case is factually distinguishable because the United Association of Journeyman brought the suit under Section 301 of the NLRA. Section 301 does give the NLRB primary jurisdiction to rule on representational issues that do not involve contract interpretation. *See Litton Financial Printing Division*, 501 U.S. at 199–203, 111 S.Ct. at 2222–23. However, this action was brought under Section 502(e)(1) which vests exclusive jurisdiction in the district courts.

Uppman in Worthington, Carlson in Faribault, Westerman in New Prague, Krueger in Mankato, and Korpi in Rush City are covered." The dispute is whether the collective bargaining unit includes only the named individuals specifically outlined in section 2 of the 1969 letter, or if it includes the drivers who replaced the named individuals on the designated routes. If the agreement does not include all the drivers on the designated route, then the collective bargaining unit does not include the replacement drivers— the drivers at issue in this dispute. If the drivers are not part of the collective bargaining unit, Old Dutch is not liable to the Pension Fund under Section 515 of ERISA.

 Section 515 of the Employee Retirement Income Security Act ("ERISA") obligates an employer to pay to a multiemployer plan contributions that are required "under the terms of the plan or under the terms of a collectively bargained agreement." Sections 502(e)(1) and 502(g)(2) of ERISA authorize the multiemployer plan's trustees to enforce the terms of the plan or collective bargaining agreement by bringing an action in federal district court for unpaid contributions, prejudgment interest thereon, liquidated damages, reasonable attorney's fees and costs, and other appropriate relief. Old Dutch was a party to a multiemployer collective-bargaining agreement that made monthly contributions to the Central States pension fund. Therefore, §§ 502(e)(1) and 515 of ERISA provide a remedy for trustees who do not receive contractually promised contributions from employers. Whether or not Central States is entitled to this remedy turns on the interpretation of the terms of the collective bargaining agreement.

 When considering a contract in the context of an ERISA claim, federal common law rules of interpretation apply. *Central States, Southeast and Southwest Areas Pension Fund v. The Kroger Co.*, 73 F.3d 727, 731 (7th Cir.1996). First, it must be determined whether the collective bargaining agreement is ambiguous. Whether the collective bargaining agreement is ambiguous is a question of law. Id. at 732. The collective bargaining unit is ambiguous if it is susceptible to more than one reasonable interpreta-

tion. *Id.* (citing Brewer v. Protexall, Inc. 50 F.3d 453, 458 (7th Cir.1995)). If the collective bargaining agreement is unambiguous, this court may declare its meaning as a matter of law. If it is unclear, then questions of interpretation must be resolved by the trier of fact. *Id.* (citing *Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 999 (7th Cir.1993), *aff'd* 513 U.S. 414, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995)).

 Neither the Pension Fund nor Old Dutch claim that the collective bargaining agreement is ambiguous; they agree that it is unambiguous, but disagree as to its interpretation. When parties suggest different, yet reasonable interpretations of a contract, the contract is ambiguous. *Id.* (citing *Murphy v. Keystone Steel and Wire Co.*, 61 F.3d 560, 565 (7th Cir.1995)); *see also Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir.1993) (because the parties attribute reasonable but differing meanings to the term "vested", we find that the term is ambiguous). When the language of a collective bargaining agreement is unclear, as here, the court must determine the "parties' actual intent" at the time of the agreement's execution. *Northwest Administrators, Inc. v. B.V. & B.R., Inc.*, 813 F.2d 223, 226 (9th Cir.1987). In this case, however, determining the parties actual intent raises issues of material fact that can not be properly resolved at the summary judgment stage.

 In examining the collective bargaining agreement, the court concludes that the paragraph stating: "[f]eeder line routes now operated by McFarlane in Rochester, Uppman in Worthington, Carlson in Faribault, Westerman in New Prague, Krueger in Mankato, and Korpi in Rush City are covered", is ambiguous. The paragraph is susceptible to more than one reasonable meaning, thus rendering the collective bargaining agreement ambiguous. It could mean that only the named drivers were part of the collective bargaining agreement or it could possibly mean that all drivers on the designated route are part of the collective bargaining agreement. Because of this ambiguity, this court

**1300**

does not have the power to declare its meaning as a matter of law. The trier of fact must interpret the terms of this paragraph.

Since, this court has the authority to determine the collective bargaining unit and the determination by the NLRB is not binding on this court, this court has the authority to determine if Old Dutch is liable to Central States for unpaid contributions under ERISA. However, because the paragraph at issue is ambiguous and at the heart of this dispute, the trier of fact must determine its meaning. Therefore, Central States and Old Dutch are not entitled to judgment as a matter of law.

### Conclusion

For the reasons set forth above, the court denies both parties' cross-motions for summary judgment. The parties are instructed to discuss settlement before the next date scheduled in this case.