William F. MARTIN, George F. Hutcheson, Ray Johnson, et al., Plaintiffs–Appellees,

v.

GARMAN CONSTRUCTION COMPANY, a corporation, Defendant–Appellant.

No. 90–2177.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1991.

Decided Oct. 17, 1991.

Louis E. Sigman, Bernard M. Baum, Alan H. Auerbach, James M. Neuman (argued), Baum & Sigman, Walter J. Reum, Reum & Casello, Chicago, Ill., for plaintiffs-appellees.

James V. Daffada, Abramson & Fox, Chicago, Ill., Gerard C. Smetana (argued), Richman, Lawrence, Mann, Greene & Smetana, Chicago, Ill., for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This case asks us to determine the preclusive effect of a decision by the National Labor Relations Board (Board or NLRB) on a subsequent district court action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132, 1145 (1988) (ERISA). We conclude that on the facts of this case, the Board's decision that the employer had not committed an unfair labor practice does not preclude the district court from later finding that the employer faced liability under ERISA.

### I.

In March 1981 Garman Construction Company (Garman), a small general contractor, and Local 150, International Union of Operating Engineers (Union or Local 150), signed a "Memorandum of Agreement" (Agreement),[1] governing fringe benefit contributions to several pension and trust funds [2] (Funds) on behalf of any union members Garman might employ in an operating engineer craft. This "prehire agreement," authorized by section 8(f) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(f) (1988),[3] bound Garman to the terms and conditions of an earlier agreement between the Union and a multiemployer bargaining unit.[4] While the Agreement was in force, Garman employed only one covered engineer.

Garman did not terminate the agreement at the end of its first three years, so it was automatically renewed for the period July 1, 1981 to May 31, 1984. But on September 3, 1981, Garman sent letters to the Union and the Funds declaring the agreement "null and void," disclaiming any bargaining relationship or obligation to Local 150 and pledging to make no further contributions to the Funds. The company then filed representation petitions with the NLRB. The Union informed Garman it would take legal steps to enforce the collective bargaining agreement and that the Funds' trustee [5]

---

1. The agreement reads in part:
 1. The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION.
 2. The Parties agree that the EMPLOYER is part of a single bargaining unit made up of all employers party to the Master Agreement adopted herein.
 3. The Parties do hereby adopt the Master Agreement dated July 1, 1978, entered into by and between the UNION and the MID AMERICA REGIONAL BARGAINING ASSOCIATION (ILLINOIS BUILDING AGREEMENT) and the parties do hereby mutually agree to be bound by the terms and conditions of that Master Agreement and the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Plan, Midwest Operating Engineers Welfare Plan, Local 150 I.U.O.E. Vacation Savings Plan and the Local 150 Apprenticeship Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.
 4. This Agreement and the adoption of the Master Agreement and the Amendments and Declarations of Trust referred to in paragraph 3 above, shall be effective as of March 20, 1981, and remain in effect to and including the expiration date of the Master Agreement adopted herein. This Agreement shall continue in effect from year to year thereafter and specifically adopt any Master Agreement entered into between the Union and MID AMERICA REGIONAL BARG. ASSOC. (ILLINOIS BUILDING AGREEMENT) subsequent to the expiration date of the Master Agreement herein adopted unless notice of termination or amendment is given in the manner provided herein.
 5. Either party desiring to amend or terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months prior to the expiration of the Master Agreement adopted herein.

2. Midwest Operating Engineers Pension Plan, Midwest Operating Engineers Welfare Plan, Local 150 I.U.O.E. Vacation Savings Plan and the Local 150 Apprenticeship Fund.

3. Prehire agreements are generally illegal, except in the construction industry, which enjoys a statutory exemption under section 8(f).

4. Garman had formerly been a member of the Northern Illinois Building Contractors Association, which delegated its bargaining authority to Mid America Regional Bargaining Association, but withdrew in 1975.

5. While the Funds and Union are distinct entities, their relationship is close. William F. Martin is both President–Business Manager of Local 150 and trustee of the Funds. Whether either

would take action to enforce Garman's financial obligations.

The legal proceedings then began. Local 150 filed an unfair labor practice charge with the NLRB in October 1981, arguing that Garman committed unfair labor practices under section 8(a)(1) and (a)(5), 29 U.S.C. § 158(a)(1), (a)(5) (1976 & Supp. V), by repudiating the contract and withdrawing recognition of the Union. Garman moved to join the Funds as necessary parties, but this was denied. In February 1982 the General Counsel issued a complaint, alleging that Local 150 had exclusive bargaining authority for Garman's employees and that Garman had illegally repudiated the agreement and refused to bargain. The proposed remedy for the unfair labor practices included compensation to the Funds for the missed contributions.

Meanwhile, the Funds sought payment. In November and December the Funds sent delinquency notices to Garman. The Union and the Funds subsequently filed suit for an alleged violation of ERISA, 29 U.S.C. §§ 1132, 1145.[6] Judge Williams stayed the matter on May 2, 1984, pending the outcome of the NLRB proceeding.

The ALJ's September 29, 1983 decision found no unfair labor practice in Garman's repudiation. The opinion recognized the vitality of the Board's rule in *John Deklewa d/b/a John Deklewa & Sons*, 282 NLRB 1375 (1987), *aff'd sub nom. International Ass'n of Bridge, Structural and Ornamental Iron Workers v. NLRB*, 843 F.2d 770 (3d Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) (*"Deklewa"*), prohibiting unilateral termination of a prehire agreement. (Our circuit affirmed *Deklewa*'s principles in *NLRB v.*

*Bufco Corp.*, 899 F.2d 608, 612 (7th Cir. 1990).) But the ALJ held that Garman did not violate the principle because of the Board's "one-man rule." This rule, first announced in *Foreign Car Center, Inc.*, 129 NLRB 319 (1960), states that an employer does not violate section 8(a)(5) when the refusal to bargain involves a single-employee unit.

The Board's December 14, 1987 decision affirmed the findings of the ALJ with respect to the prehire agreement.[7] The Board held:

> The [ALJ] ... dismissed the allegation in the complaint because of the "one-man unit" rule. This rule holds that the Board will not find that an employer has violated Section 8(a)(5) when the refusal to bargain involves a single-employee unit. *Foreign Car Center*, 129 NLRB 319 (1960).
>
> We agree with the judge that under the facts of this case, the allegation of an 8(a)(5) violation concerning the Operating Engineers should be dismissed.

Decision and Order at 5. Local 150 petitioned for review in this court, but the petition was dismissed on a joint motion under Fed.R.App.P. 42(b). (Garman was not an adverse party.) The district court then granted the Funds' motion to reinstate the case.

In her order reinstating the action, Judge Williams indicated that she would give "collateral estoppel effect to the NLRB's determination that a contract existed between July 1, 1981 and May 31, 1984." Mem.Op. and Order (June 23, 1989). On cross motions for summary judgment the district court ruled that the company's unilateral

---

party can represent both parties' interests is not material to our decision.

**6.** ERISA section 515 provides a remedy for contributions due from employers, regardless of most potential defenses:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (1988). The trustee is authorized to pursue collection by 29 U.S.C. § 1132(a)(3), (d)(1) (1988).

**7.** The ALJ and the Board also found that Garman had violated section 8(a)(1) by interrogating employees about union support, creating the impression that recall to work was conditional on union withdrawal, implying that job status was conditioned on union withdrawal, assisting in preparation of a decertification petition and promising improved benefits. Decision and Order at 6 (Dec. 19, 1987). These holdings were not part of the district court proceeding and are not before us.

repudiation violated the holding in *Deklewa* and the company's obligation under ERISA section 515. Mem.Op. and Order (Apr. 5, 1990). The Company was held liable for $19,424.30 in unpaid contributions, $3,884.86 in liquidated damages and $528.00 in audit fees. Garman submitted a motion to reconsider. In its denial of the motion, the court clarified the holding:

> Defendant Garman's motion to reconsider is denied. Whatever the effect *on the NLRB* of the "one-man unit" rule as to the NLRB's power to declare an unfair labor practice, as far as this court is concerned, the April 5, 1990 order states the law to be applied in this ERISA collection case: A collective bargaining agreement bound the parties; Garman is liable for ERISA payments. The court rejects Garman's argument to not apply *Deklewa* retroactively. Not applying *Deklewa* would be contrary to ERISA and to the policy considerations underlying ERISA.

Docket Entry (Apr. 27, 1990) (emphasis in original). Garman now contends that the district court failed to afford appropriate preclusive effect to the Board's decision under the doctrines of res judicata and collateral estoppel and failed to defer to the primary jurisdiction of the NLRB. The Funds respond that the NLRB ruled only on the unfair labor practice claim—not the ERISA claim—and that Judge Williams was therefore entitled to find Garman in violation of ERISA.

## II.

### A. Standard of Review

We review the district court's holding on summary judgment *de novo*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Moodie v. School Book Fairs, Inc.*, 889 F.2d 739, 743 (7th Cir.1989). Garman appeals from the final judgment by the district court. We accordingly do not rule on the merits of the NLRB unfair labor practice proceeding.

### B. *Preclusive Effect of the Board's Decision*

The central question in this case is what effect Garman's repudiation had on its obligations under the NLRA and ERISA. Garman's thesis is that the Board's decision established the parties' rights under both the NLRA and ERISA. The Funds claim that even though the Board found that Garman did not violate the NLRA, the district court was not precluded from finding that Garman had run afoul of ERISA.

### 1. *Res Judicata and Collateral Estoppel*

■ Garman first argues that because the Funds' claim before the NLRB included collection of the allegedly delinquent contributions, the matter should not have been decided anew by the district court. Res judicata, or claim preclusion, bars relitigation of a claim that a party raised or could have raised in a prior adjudication. The Supreme Court has held that agency adjudication of a factual matter can be res judicata in later proceedings. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

Garman's argument fails because the NLRB lacks jurisdiction to consider the ERISA claim. Enforcement claims by a fiduciary under ERISA may be brought in federal court only. 29 U.S.C. § 1132(e)(1) (1988). Because the NLRB lacked jurisdiction, the claim under ERISA did not merge into the earlier proceeding. *Restatement (Second) of Judgments* § 26(1)(c); *cf. Rockford Mutual Ins. Co. v. Amerisure Ins. Co.*, 925 F.2d 193, 196–97 (7th Cir.1991) ("*Res judicata* precludes a party from raising even those issues it failed to raise in a prior action, but only if the issue could have been raised."); *Washam v. J.C. Penney Co.*, 519 F.Supp. 554, 558–59 (D.Del. 1981) (NLRB's resolution of unfair labor practice claim not res judicata as to EEOC's race discrimination claim (and vice versa) since neither agency has jurisdiction to consider both claims). Even if the General Counsel's complaint requested, and the Board authorized, compensation to the

Funds as a remedy for an unfair labor practice, the Board could not authorize a remedy under ERISA.

■■■■ Collateral estoppel is a different matter. Garman argues that because the issue of the agreement's enforceability was resolved in the NLRB proceeding, the Funds should be precluded from relitigating the matter. Collateral estoppel prohibits relitigation of an issue of fact or law when the issue is actually litigated, determined by a final judgment and essential to the judgment of a prior tribunal. *Restatement (Second) of Judgments* § 27; *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Rockford Mutual Ins. Co.*, 925 F.2d at 198. Agency adjudications are afforded collateral estoppel effect, provided appropriate safeguards are met. *Utah Construction & Mining*, 384 U.S. at 421–22 & n. 18, 86 S.Ct. at 1559–60 & n. 18 (agency's finding of fact entitled to collateral estoppel in most cases).

Whether an obligation arises under ERISA involves two distinct questions: the existence of a contractual relationship covered by the act, and whether a violation occurred. The district court afforded collateral estoppel effect to the Board's ruling on the existence of a contract. The Board conclusively found that Garman had entered into a contract that ran through May 31, 1984, Decision and Order at 4 n. 6, and the court gave this finding preclusive effect. Garman now claims this holding to be dicta, but it was vital to the agency's holding because, without it, the Board need not have reached the one-man rule issue. The court concluded that the Company's obligation under ERISA similarly extended to May 31, 1984.

However, the Board's finding that the one-man rule barred a remedy under the NLRA did not resolve the issue of a potential remedy under ERISA. Defenses to the validity of a labor contract and liability under ERISA's section 515 present distinct issues. In *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir.1989) (en banc), our court stated:

[A] plan may enforce the writings according to their terms, if "not inconsistent with law". The pension or welfare fund is like a holder in due course in commercial law ... or like the receiver of a failed bank ...—entitled to enforce the writing without regard to understandings or defenses applicable to the original parties.

*Id.* at 1149 (citations omitted). The opinion continues:

The text of § 515 is adapted to its purpose, making promises enforceable "to the extent not inconsistent with law". If the contract provides for the commission of unlawful acts, it will not be enforced.... If the employer simply points to a defect in its formation—such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law—it must still keep its promise to the pension plans.

*Id.* at 1153 (citation omitted); *see also Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990); *Mayeske v. International Ass'n of Fire Fighters*, 905 F.2d 1548, 1553 (D.C.Cir.) ("Since the NLRB, in applying the National Labor Relations Act, made an inquiry different from the one that the ERISA case law requires ..., we see no basis for giving the NLRB's decision issue-preclusive effect.") (Thomas, J.), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 311 (1990). The district court properly refused to permit the one-man rule to impair the contract's validity under 29 U.S.C. § 1145. Collateral estoppel therefore does not automatically preclude an ERISA remedy when the company avoids liability for an unfair labor practice under the NLRA.

The issues are further distinguished, as in the res judicata context, by the jurisdictional division between the NLRB and the district court. The *Restatement* recognizes that collateral estoppel should not apply when "[a] new determination of the issue is warranted by ... factors relating

to the allocation of jurisdiction between [the two tribunals]." *Restatement (Second) of Judgments* § 28(3).[8] As discussed above, the district court's exclusive jurisdiction over ERISA claims distinguishes the issue before it in this case from the issue that was before the NLRB.

In *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), the Court assessed whether a union could enforce the terms of a prehire agreement in an action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988), prior to repudiation by one of the parties. The Court held that such an action was permissible and distinguished the obligations under the contract from majority status and representation issues. The Court held:

> A § 8(f) prehire agreement is subject to repudiation until the union establishes majority status. However, the monetary obligations assumed by the employer under a prehire contract may be recovered in a § 301 action brought by a union prior to the repudiation of the contract, even though the union has not attained majority support in the relevant unit.

461 U.S. at 272, 103 S.Ct. at 1759. Despite both parties' claim of support from *Todd,* the opinion affords little help because it was undisputed there, unlike in this case, that the prehire agreement had not been repudiated. Moreover, the Court did not address possible enforcement under ERISA, although it stressed the "critical distinction between an employer's obligation under the Act to bargain with the representative of the majority of its employees and its duty to satisfy lawful contractual obligations that accrued after it enters a prehire contract." *Id.* at 267, 103 S.Ct. at 1757.

 Garman's final argument is that the district court's holding violates section 515's prescription that an employer's obligations under the act must not be "inconsistent with law" because the holding now conflicts with the Board's one-man rule. This argument has two flaws. First, as we held in *Central States,* many of the defenses available under the NLRA or under traditional contract law do not fly under ERISA. The one-man rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA. Similarly, even if a contract's arbitration clause becomes inoperative due to repudiation, as the district court found in *Chicago Truck Drivers, Helpers and Warehouse Workers Union v. Pratt & Lambert, Inc.,* 1989 WL 157270, 1989 U.S. Dist. LEXIS 15034 (N.D.Ill.1989), enforcement under ERISA (not alleged in that case) is not foreclosed.

Second, it could be argued that for the district court to have held otherwise would have been inconsistent with our holding in *Bufco* that prehire agreements cannot be unilaterally repudiated, which has not yet been modified in relation to the one-man rule. This case is not before us for review of the NLRB's holding, and Garman restricts its arguments to the preclusive effect of the Board's decision, so we are not prepared to discuss the merits. In addition, we note that although the rendering tribunal does not determine the preclusive effect of its opinion, the Board clearly considered its decision to be for purposes of the NLRA only:

> The complaint alleged that the Respondent violated Section 8(a)(5) and (1) by repudiating the contract and withdrawing recognition from the Operating Engineers. The judge found that the Respondent had not merged into the multiemployer unit and that the Respondent was bound by the 1981–1984 master agree-

---

**8.** Comment (e) to this section provides a particularly apt analogy:

> [A] determination in a state court action on a patent license agreement upholding the defense that the patent was invalid for want of invention would not be held binding in a subsequent federal court action for patent infringement if the Congressional grant of ex-

clusive jurisdiction in patent infringement cases to the federal district courts is construed to require otherwise.

Congress's vesting of jurisdiction over labor disputes in the NLRB and over ERISA claims in the district court demonstrates its intent that for ERISA purposes the court have authority to assess the Agreement's validity anew.

ment, but dismissed the allegation in the complaint because of the "one-man unit" rule. This rule holds that the Board will not find that an employer has violated Section 8(a)(5) when the refusal to bargain involves a single-employee unit. Decision and Order at 5.

Our holding does not conflict with those cases in which an NLRA obligation is a necessary predicate to an ERISA claim. In *Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), a trust fund sued for contributions allegedly owed when an employer refused to negotiate after the expiration of a collective bargaining agreement. The Court held:

> [B]oth the text and the legislative history of §§ 515 and 502(g)(2) provide firm support for the Court of Appeals' conclusion that this remedy is limited to the collection of "promised contributions" and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA.

484 U.S. at 548–49, 108 S.Ct. at 836 (citation omitted). The trust fund in *Laborers Health* had no explicit agreement giving rise to an obligation, and the fund could hope to collect only if there was a duty to continue bargaining—clearly a question for Board competence. Here, Garman's liability under section 515, appropriately addressed by the district court, arose directly from the contract that Garman entered, even if the repudiation is not an unfair labor practice.

### 2. *Primary Jurisdiction*

Garman also claims that the district court should have deferred to the Board's holding under the primary jurisdiction doctrine. For an issue to be subject to the Board's primary jurisdiction, the issue must arguably be subject to section 7 or 8 of the NLRA. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."); *DeSantiago v. Laborers Int'l Union, Local No. 1140*, 914 F.2d 125, 129 (8th Cir.1990) (also citing cases). Because the Board lacked jurisdiction to consider the ERISA claim, it does not enjoy primary jurisdiction as to this issue. The Funds' ERISA claim is therefore not subject to the Board's primary jurisdiction. Moreover, even if the NLRB had jurisdiction over the ERISA claim, the principles of contract interpretation and federal law at stake do not require initial adjudication by the Board.

### III.

The NLRB's order regarding the Union's 8(a)(1) and 8(a)(5) claims did not preclude the Funds' ERISA claim in district court and did not resolve the issue of ERISA liability. Moreover, because the NLRB lacked jurisdiction to consider the ERISA claim, res judicata did not bar the claim. This appeal has not addressed the Board's application of the one-man rule in the prehire agreement context.

AFFIRMED.