**CARPENTERS FRINGE BENEFIT
FUNDS OF ILLINOIS,**
Plaintiffs,

v.

**ABLE BROS. CONSTRUCTION, INC.,**
a corporation, Defendant.

No. 90 C 6482.

United States District Court,
N.D. Illinois, E.D.

Feb. 18, 1993.

**644**

Bernard M. Baum, James Merrill Neuman, Alan H. Auerbach, Baum & Sigman, Ltd., Chicago, IL, for plaintiffs.

Robert Patrick Casey, Dwight D. Pancottine, Michelle T. Barrett, Murphy, Smith & Polk, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

This is an action brought by Carpenters Fringe Benefit Funds of Illinois, jointly-administered, labor-management fringe benefit funds ("plaintiffs"), alleging that Able Bros. Construction, Inc. ("defendant") has failed to pay all necessary contributions for work performed by beneficiaries of the plaintiffs. The action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132, 1145. The plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the plaintiffs' motion is denied.

## BACKGROUND

This dispute focuses on alleged benefit contributions that were not made by the defendant to the plaintiffs.

The defendant and the Fox River Valley District Council of Carpenters of the United Brotherhood of Carpenters and Joiners of America ("Union") executed a document entitled "Memorandum of Agreement" on September 17, 1970. (Defendant's Rule 12(N) Statement, No. 3).

The one-page document is set out in relevant portion below.

## MEMORANDUM OF AGREEMENT

THIS AGREEMENT made and entered into in Aurora, Illinois, by and between ABLE BROS. CONST. ("EMPLOYER") and Fox River Valley District Council of Carpenters of the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICAN ("UNION").

In consideration of the mutual promises of each other, the parties hereby AGREE as follows:

1. The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER now or hereafter employed within the territorial and occupational jurisdiction of the UNION.

2. The parties do hereby adopt the latest Agreement, and all approved amendments thereto between the UNION and the ASSOC. and agree to be bound by all of the terms and conditions thereof for the duration of such Agreement and for the period of any subsequent extensions including any amendments which may be subsequently made, unless either party serves written notice upon the other at least one hundred twenty (120) days prior to the stated expiration date in the Agreement or to any subsequent expiration date of a desire to terminate this Memorandum of Agreement.

3. This Agreement shall become effective upon the date of execution.

IN WITNESS WHEREOF, the parties have executed this Agreement the 17th day of September, 1970.

(Smith Affidavit, Exhibit A.)

This Memorandum of Agreement has not been terminated by written notice.

The plaintiffs claim that Memorandum of Agreement binds the defendant to the collective bargaining agreements and trust agreements referenced therein. This includes the voluminous Joint Agreement between the Union and the Fox Valley General Contractors Association. (Smith Affidavit, Exhibit B.) The defendant maintains that it never received, reviewed or executed

any copies of the association agreement or trust agreements allegedly incorporated by reference in the Memorandum of Agreement. (Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, p. 2.) Defendant asserts that it believed the Memorandum Agreement only applied to union carpenters, and only required the defendant to pay union wages and fringe benefits to the union carpenters that defendant hired. (Defendant's Memorandum in Opposition, p. 2.) Defendant further states that, other than paying union wages and fringe benefits to its union carpenter employees, defendant was never required to conform its employment practices to the requirements contained in association agreement. (Defendant's Memorandum in Opposition, p. 3.)

The defendant asserts that it has made all the contributions to the plaintiffs which the defendant believes were required since signing the Memorandum of Agreement in 1970. (Estes Affidavit, ¶ 4.) The plaintiffs have submitted documentation that the defendant has made contributions at least through April 1990. (Plaintiffs' Memorandum in Reply, Exhibit 1.) The defendant is a presently defunct corporation that has not operated since the Spring of 1991. (Estes Affidavit, p. 1.)

The plaintiffs assert that the defendant has several obligations under the agreements and declarations of trust:

Defendant is obligated by the agreements to make fringe benefit contributions to Plaintiffs under the agreements and declarations of trust pursuant to which the Plaintiffs are maintained. Defendant is specifically required to do the following:

(a) To submit for each month a report stating the names, social security numbers and number of hours worked in such month by each and every person on whose behalf contributions are required to be made by Defendant to Plaintiffs, or if no such persons are employed, to submit a report so stating;

(b) To accompany the aforesaid reports with payment of contributions based upon an hourly rate as stated in the applicable collective bargaining agreement or agreements;

(c) To make all of its payroll books and records available to Plaintiffs for the purpose of auditing the same to verify the accuracy of Defendant's past reporting upon request made by Plaintiffs;

(d) To compensate Plaintiffs for the additional administrative costs and burdens imposed by the delinquent or untimely payment of contributions by way of the payment of liquidated damages in the amount of 10 percent of any and all contributions which are not received by Plaintiffs for a particular month prior to the 10th day of the succeeding month, or the sum of 20 percent of such contributions as liquidated damages should there be further delay in payment as necessitates the filing of a lawsuit by Plaintiffs against Defendant.

(Plaintiffs' 12(N) Statement, ¶ 5.)

An audit of the defendant's payroll books and records for the months of January 1985 through April 1990 was conducted on behalf of the plaintiffs on May 29, 1990.[1] (Halfpenny Affidavit, p. 8, Exhibit A.) Total alleged delinquencies found for the period were $17,581.00 in connection with two employees, L. Roberson and G. Hegeman.

ERISA Section 515, under which the plaintiffs have brought this action, provides:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions

---

1. The Halfpenny Affidavit initially states the date of the audit was May 29, 1992. The audit materials, however, are dated May 29, 1990. Given the chronology in the case, 1990 is apparently the correct date.

in accordance with the terms and conditions of such plan or such agreement. 29 U.S.C. § 1145 (1985).

The plaintiffs claim damages as a consequence of this delinquency of $20,039.58, which is composed of the $17,581.98 delinquency, $1,758.20 liquidated damages (10% of the delinquency) and $699.40 in audit fees. (Plaintiffs' Memorandum in Support, p. 4.) The plaintiffs also claim $3,500 in costs and attorney's fees. (Plaintiffs' Memorandum in Support, pp. 4–5.)

The plaintiffs' damages track ERISA Section 502(g), which lists available damage awards:

(g) Attorney's fees and costs; awards in actions involving delinquent contributions

(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132 (1985).

The defendant has responded to the plaintiffs' motion with three legal theories as to why defendant is not liable in this case:

1. the Memorandum of Agreement did not bind the defendant to the multi-employer association and trust agreements because there was no mutual assent;

2. the Memorandum of Agreement is no longer in effect; and

3. the employees in question did not do carpentry work and are not covered by the agreements; therefore the defendant does not owe the amount claimed.

The plaintiffs have replied with three legal theories:

1. contract formation defects do not relieve employers of liability under ERISA;

2. by its own terms, and the defendant's conduct, the Memorandum of Agreement is still in effect; and

3. the burden is upon the defendant to show that the employees were not carpenters and the defendant did not meet this burden.

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Mutual Assent/Contract Formation*

█ The defendant asserts that the 1970 Memorandum of Agreement is insufficient to bind it to the multi-employer association and trust agreements which form the basis for this action. In support of this position, the defendant makes several arguments:

a. the Memorandum of Agreement is a short, summary document that makes no specific reference to union trust funds, fringe benefit contributions, or trust agreements, and does not identify the "Assoc." referenced;

b. the defendant never received copies of any of the agreements allegedly incorporated by reference;

c. the defendant, except for paying union wages and fringes to its union carpenter employees, was never required to confirm its practices to the association agreement;

d. the defendant, when executing the 1970 Memorandum of Agreement, believed it only applied to union carpenters and only required the defendant to pay union wages and fringes to the union carpenters it hired.

The defendant states that these circumstances indicate there was no mutual assent necessary for the formation of a valid contract, and the defendant is not bound to the association and trust agreements. The defendant cites *Caporale v. Mar Les, Inc.*, 656 F.2d 242 (7th Cir.1981) for this proposition.

The plaintiff counters with *Central States Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir.1989). The plaintiff maintains that the defense that a contract is unenforceable due to lack of mutual assent is unavailable under Section 515 of ERISA in this circuit.

The parties' situation seems to fall under two seemingly inconsistent lines of Seventh Circuit cases.

The first line of cases analyzes mutual assent of the parties to the contracts. *Caporale v. Mar Les, Inc.*, 656 F.2d 242 (7th Cir.1981); *Giardono v. Jones*, 9 E.B.C. 1252, 1987 WL 47730 (N.D.Ill.1987) *aff'd* 867 F.2d 409 (7th Cir.1989). The facts in *Caporale* are somewhat similar to the case at bar. The defendant, Mar Les, Inc., was a small concrete construction firm which employed, at most, ten laborers. 656 F.2d at 243. Two of Mar Les' employees joined the union, and Mar Les' president, to obtain union benefits for one of those employees, signed two memoranda of understanding. *Id.* The memoranda were identical and contained three paragraphs which provided that: (a) the employer recognizes the union as the sole bargaining agent for all laborers employed by the employer; (b) that certain collective bargaining agreements are incorporated by reference; (c) the employer agrees to be bound by those agreements; and (d) the employer agrees to pay amounts set forth in the collective bargaining agreements to the pension fund. *Id.* Copies of the lengthy collective bargaining agreements and declarations of trust were never delivered to Mar Les. *Id.* Other than mailing the required contributions to the pension funds on behalf of the one union employee, Mar Les never conformed its operations to the requirements of the collective bargaining agreement. 656 F.2d at 244. The pension fund brought an action for the allegedly delinquent contributions which had not been paid for Mar Les' other employees. *Id.*

The court in *Caporale* stated that mutual assent is the first requisite to formation of a contract. 656 F.2d at 244. To establish a contract, the promised performance must be stated with reasonable certainty, and if the items of the contract are not reasonably certain at the time an agreement is signed, no contract is created. *Id.* at 245. The court held that the one-page memorandum, while maybe creating some limited contractual relationship between the parties, did not bind Mar Les to the other agreements. *Id.* The court stated the fact the agreements had never been delivered to the Mar Les and that Mar Les had never conformed its conduct to be agreements indicated a lack of mutual assent. *Id.*

The district court followed *Caporale* in *Giardono v. Jones*, 9 E.B.C. 1252, 1987 WL 47730 (N.D.Ill.1987) *aff'd* 867 F.2d 409 (7th Cir.1989), which is nearly factually identical to *Caporale*. In *Giardono*, the defendant employer signed a one-page memorandum of understanding incorporating other agreements, the other agreements were never provided to the employer, the employer never conformed his business conduct to the referenced agreements, and the

employer only made payments to the pension fund on behalf of himself (to retain benefits from his days as an employee). *Giardono v. Jones*, 9 E.B.C. 1252, 1255–1256, 1987 WL 47730 (N.D.Ill.1987). The Seventh Circuit did not analyze the mutual assent issues because they were *not* appealed. *Giardono*, 867 F.2d 409. Judge Easterbrook, in his concurring opinion, strongly indicated the issue had been incorrectly decided. *Id.* at 416. Citing *Robbins v. Lynch*, Judge Easterbrook emphasized that the defendant had signed a contract with the fund promising to make payments on behalf of all of his employees. 867 F.2d at 416.

Apparently contrary results, in cases under 29 U.S.C. § 1145, were reached by the Seventh Circuit in *Central States, S.E. & S.W. v. Gerber Truck*, 870 F.2d 1148 (7th Cir.1989) and *Robbins v. Lynch*, 836 F.2d 330 (7th Cir.1988). In *Gerber Truck*, an employer executed the union collective bargaining agreement and related documents in an effort to retain union benefits for three employees who had been "inherited" when the employer acquired another trucking business. 870 F.2d at 1149–50. The employer and union representative agreed that the purpose of the agreements was to provide health and pension coverage to the three employees, and that no other employees were covered by the agreements (despite the agreements' all inclusive language). *Id.* at 1150. The employer and union representative basically agreed that the agreements would not be enforced. *Id.* The relevant pension and welfare plans were not informed of the oral understanding reached by the employer and the union representative. *Id.* The employer made all required payments for the three employees until they retired or quit. *Id.* The employer was audited by the plans, which discovered the employer had not made payments for its other employees and brought suit. *Id.* at 1150–1151. The employer claimed the oral agreement between the employer and the union effectively limited the employer's liability under the agreements. *Id.*

The court in *Gerber Truck* first noted that pension and welfare plans are general-ly not parties to collective bargaining and participation agreements, but are third-party beneficiaries to them. *Id.* at 1151. However, unlike most third-party beneficiaries, they do *not* take contracts as they find them. *Id.* The court held that under ERISA § 515, the employer's promise to pay is enforceable "to the extent not inconsistent with law;" thus, the contracts will be enforced unless the contract provides for the commission of an unlawful act. *Id.* at 1153. *"If the employer simply points to a defect in its formation*—such as fraud in the inducement, oral promises to disregard the text, or a lack of majority support for the union and the consequent ineffectiveness of the pact under labor law—it must still keep its promises to the pension plans."* *Id.* (emphasis added.)

In a lengthy discussion, while acknowledging that this result could be harsh, the Seventh Circuit in *Gerber Truck* stated that it was necessary to prevent funds from being burdened with excess costs and delays in litigating such challenges. 870 F.2d at 1151–1156. This was deemed the only way to enable funds to meet their financial commitments and to comply with Congressional intent. *Id.* The court concluded that the pension fund is like a holder in due course, and entitled to "enforce the writing without regard to understandings or defenses applicable to the original parties." *Id.* at 1149. The dissent criticized the result as acting as if the law of contracts had been repealed. *Id.* at 1156–1158 (J. Cudahy). The case made no reference to the earlier *Caporale* decision.

The *Robbins* court held pension trusts, as third-party beneficiaries of collective bargaining agreements, are not bound by undisclosed side agreements between employers and local unions. 836 F.2d at 333. The court stated that

[F]unds must assume all participants in a plan are following the stated terms; no other approach permits accurate actuarial computations and proper decisions about which claims to pay.

*Id.* The fact the employer did not sign the relevant agreement was not dispositive; an employer may adopt a collective bargaining

agreement by course of conduct. *Id.* at 332–333.

The *Gerber Truck* rule was reaffirmed in *Martin v. Garman Const. Co.*, 945 F.2d 1000 (7th Cir.1991). The *Martin* court emphasized that pension funds have special status under the law,[2] and that many defenses normally available in contract actions are not available against a pension funding asserting its rights under 29 U.S.C. § 1145. 945 F.2d at 1004. The *Martin* court held that collateral estoppel resulting from a decision of the N.L.R.B. does not preclude an ERISA remedy. *Id.*

While the Seventh Circuit has not expressly overruled *Caporale*, in light of its holdings in *Lynch, Gerber Truck,* and *Martin,* the value of *Caporale* as precedent is questionable. Therefore, this court will follow the rule stated in *Gerber Truck,* and hold that the defendant's defenses based on contract formation defects cannot be asserted against the plaintiffs.

### Expiration of the Agreement

█ The defendant argues that even if defendant is bound by the association and trust agreements, the plaintiffs' motion must be denied because the 1970 Memorandum of Agreement expired before the time period for which the plaintiffs seek recovery (1985–1990).

The defendant specifically argues that the 1970 Memorandum of Agreement was only to stay in effect for "the duration of such Agreement and for the period of any subsequent extensions including amendments which may be subsequently made." (Defendant's Memorandum in Opposition, pp. 4–5.) The defendant maintains that this language indicates that the defendant is only bound by extensions or amendments and *not new* association agreements. (Defendant's Memorandum in Opposition, pp. 4–5.) The defendant states that the multi-employer agreement and association agreement submitted by the plaintiffs expired by its own terms on May 31, 1975. (Smith

Affidavit, Exhibit B at. p. 43.) The defendant asserts that it is unlikely that the agreement was only "extended" or "amended" in the ensuing fifteen year period, and that a new agreement, which would not bind the defendant, undoubtedly was created. (Defendant's Memorandum in Opposition, pp. 5–6.) The defendant emphasizes that the plaintiffs have failed to present any evidence of what happened with the agreements between 1975 and 1990, and also states there could have been strikes since 1975, which would also terminate the short-form agreement. (Defendant's Memorandum in Opposition, pp. 5–6 and fn. 4.) A good deal of the defendant's argument amounts to speculation. However, the court notes the plaintiffs have submitted no information as to whether the underlying collective bargaining and trust agreements have been extended or replaced with new agreements or whether any strikes have occurred.

The plaintiff responds with two arguments: (1) the Memorandum of Agreement's language is not as restrictive as indicated by the defendant; (2) the defendant's own conduct indicates the agreements were still in effect. (Plaintiffs' Memorandum in Reply, pp. 3–5.) The plaintiffs emphasize the defendant has conceded that defendant never attempted to terminate the Memorandum of Agreement (in writing with proper notice). (Plaintiffs' Memorandum in Reply, p. 3.)

The Memorandum of Agreement provides in Paragraph 2:

> 2. The parties do hereby adopt the latest Agreement, and all approved amendments thereto between the UNION and the ASSOC. and agree to be bound by all of the terms and conditions thereof for the duration of such Agreement and for the period of any subsequent extensions including any amendments which may be subsequently made, unless either party serves written notice

---

2. Labor contracts also have a special status under the law. "Ordinary common law contract principles, therefore, cannot simply be imported whole into the labor context and mechanistically applied to collective bargaining agreements.

To foster industrial peace and stability, we must read collective bargaining agreements with a sensitivity to considerations of national policy." *Merk v. Jewel Food Stores,* 945 F.2d 889, 892 (7th Cir.1991).

upon the other at least one hundred twenty (120) days prior to the stated expiration date in the Agreement or to any subsequent expiration date of a desire to terminate this Memorandum of Agreement.

The plaintiffs put great weight on the phrase "... unless either party services written notice upon the other at least one hundred and twenty (120) days prior to the expiration date in the Agreement or to any subsequent expiration date of a desire to terminate this Memorandum of Agreement." The plaintiffs argue that the inclusion of a reference to subsequent expiration dates indicates that the Memorandum of Agreement was intended to stay in effect during any subsequent association agreements. (Plaintiffs' Memorandum in Reply, p. 5.) The plaintiffs assert that if the Memorandum of Agreement would expire by its own terms, the written termination requirement would not be necessary. (Plaintiffs' Memorandum in Reply, p. 5.)

■ The contractual language is ambiguous, and it is subject to more than one interpretation. Of greater significance is the defendant's conduct. This court notes that a collective bargaining agreement can be in writing, oral, or a combination of both. *Merk v. Jewel Food Stores*, 945 F.2d 889, 994 (7th Cir.1991). A defendant employer can bind himself to such an agreement by course of conduct. *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir.1988). The defendant clearly acted in a manner indicating that defendant believed an agreement was in effect. The defendant continued to submit required contributions and statements throughout the period for which delinquent contributions are claimed. (Plaintiffs' Memorandum in Reply, p. 5 and Exhibit A.) Further, defendant consented to an audit of defendant's payroll records, which ultimately lead to this action, on May 29, 1990. (Halfpenny Affidavit p. 8.) It is unlikely the defendant would have continued making contributions or permitted an audit if defendant believed all its obligations to the plaintiffs had terminated on May 3, 1975.

*Status of Employees*

■ The defendant next argues that the plaintiffs are not entitled to the amount claimed, or at least not the full amount, because the employees in question were not covered by the union contract.

The plaintiffs argue that the defendant is foreclosed from such arguments by ERISA's requirement of adequate recordkeeping. The plaintiffs claim the two paragraphs of explanations in the Estes affidavit do not meet the defendant's burden in overcoming the recordkeeping requirement. (Plaintiffs' Memorandum in Reply, p. 7.)

An employer has a duty to keep proper records in order to verify its reporting practices under ERISA. 29 U.S.C. § 1059(a)(1). While the parties cite no Seventh Circuit cases discussing the nature of the employer's burden, other courts of appeals have discussed the issue. *Brick Masons Pension Tr. v. Indus. Fence & Supply*, 839 F.2d 1333 (9th Cir.1988); *Combs v. King*, 764 F.2d 818 (11th Cir.1985).

In *Brick Masons*, the Ninth Circuit held that a unionized subsidiary, which violated its statutory duty under ERISA to keep accurate records, was required to pay contributions for all hours worked by nonunion masons during the quarters which the workers were shown to have performed some covered work for the unionized subsidiary. 839 F.2d at 1338. Once the trust produces evidence raising questions about the employer's records under ERISA, the burden of disproving the trustee's estimate due to failure to keep adequate records shifts to the employer. *Brick Masons*, 839 F.2d at 1337–38; *Combs*, 764 F.2d at 826.

The defendant's president, Mr. Robert Estes, claims that two employees were intermittently employed as handymen/laborers. (Estes Affidavit, p. 6.) Mr. Estes claims it was never the understanding or practice of the defendant, since executing the 1970 Memorandum of Agreement, to pay contributions to the plaintiffs for such individuals. (Estes Affidavit, p. 6.) Mr. Estes states that while the employees occasionally did carpenter's work, if necessary, carpenters' work accounted for only 10% of their hours, and most months they per-

formed no carpenter's work. (Estes Affidavit, pp. 6–7).

The question is a close one in this case. The plaintiffs have submitted the results of the audit dealing with the records of the two employees. (Halfpenny Affidavit, Exhibit A.) This provides some evidence of noncompliance by the defendant. Nowhere, however, are the employees identified as carpenters in the audit reports. The plaintiffs have not alleged that the defendant is required to make contributions for all employees regardless of duties. The plaintiffs claim, without explanation, that the defendant identified the employees as carpenters. (Plaintiffs' Memorandum in Reply, p. 7.) The defendant counters with the Estes affidavit which asserts the employees were not covered under the contract because they were not carpenters. The defendant has not submitted any documentary evidence to this effect.

The materials are obviously limited on this point. Taking all inferences in favor of the nonmoving party, this court cannot conclude there is no issue of material fact as to whether the employees were carpenters and covered under the agreements.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for summary judgment is DENIED. The parties are strongly urged to discuss settlement. The case is set for a status report at 10:00 a.m. on March 4, 1993.