**ILLINOIS CONFERENCE OF TEAM-
STERS & EMPLOYERS WEL-
FARE FUND, Plaintiff,**

v.

**STEVE GILBERT TRUCKING,
Defendant.**

No. 92–3267.

United States District Court,
C.D. Illinois,
Springfield Division.

May 20, 1994.

Thomas H. Wilson, Michael A. Myers, Springfield, IL, for plaintiff.

Gordon W. Gates, James R. Potter, Springfield, IL, Stuart I. Cohen, Jeffrey Alan Ryva, Peoria, IL, for defendant.

### OPINION

RICHARD MILLS, District Judge:

ERISA

Plaintiff has asked for summary judgment and moves to strike certain portions of Steve Gilbert's affidavit.

#### I. Background

Plaintiff has brought this Employee Retirement Income Security Act (ERISA) claim against Steve Gilbert Trucking, seeking to collect delinquent contributions owed to the fund. Gilbert claims that he is not liable for any contributions to Plaintiff, and even if he

is liable, he is not liable for the amount claimed by Plaintiff.

Gilbert is the owner of a small trucking company. Until March 1990, he had operated as a non-union company. In March of 1990, he signed the Articles of Construction Agreement between the Associated General Contractors of Illinois and the Illinois Conference of Teamsters. Gilbert claims that the purpose of signing this agreement was to allow him to participate in a major federally funded interstate project that was to be conducted near Champaign, Illinois. According to Gilbert, the local teamsters union, Local 26, used this project as a tool to persuade all non-union trucking companies in the area to sign up with the union.

To help induce Gilbert to sign on with the union, the business agent for Local 26, Michael Carr, allegedly told Gilbert that the union would not organize his shop or appoint a union steward. Gilbert also alleges that Mr. Carr never informed him of any obligation to make health or pension fund contributions. According to Gilbert, this was an important point since he did not feel that many of his workers, who were part-time employees, would ever vest in the fund. Based on these representations, or lack thereof, Gilbert signed the Articles of Construction Agreement Booklet (Agreement Booklet) without reading it or having a lawyer read it.

Unbeknownst to Gilbert, the Agreement Booklet contained the following paragraph:

> The employer agrees to contribute to the Illinois Conference of Teamsters and Employers Welfare Fund, effective May 1, 1989, the rate of $2.10; effective May 1, 1990, the rate of $2.30; and effective May 1, 1991, the rate of $2.50, for each hour worked by each employee covered by this agreement.

He also signed a Participation Agreement with the fund which bound him to the terms of the Welfare Fund Declaration of Trust.

Gilbert made one contribution payment to the fund for work conducted by two of his employees in July 1990. After that payment, however, no further contributions were ever paid. The union did not organize Gilbert's shop and did not appoint a union steward. Gilbert did receive five letters from the fund advising him of his failure to make contributions. He claims that since it was his understanding that his workers were not covered by the fund, he did not feel that he owed any contributions.

In August of 1992 the fund informed Gilbert that it was going to conduct an audit of his books to determine if Defendant had made all required contributions. The fund had authority to conduct the audit under the Agreement Booklet and ERISA. Sometime after receiving notice of the audit, Gilbert renewed his contract with the union by again signing the Agreement Booklet.

Gilbert refused to allow the audit and this lawsuit was filed. He subsequently allowed the audit which was conducted by Michael Cairns, an auditor employed by the fund. The only employment records kept by Gilbert and given to Mr. Cairns were payroll ledger sheets. These sheets listed the employee's name, job title, and gross pay. To determine the contributions due, Mr. Cairns took the employees who were designated as drivers, divided their gross pay by the union hourly rate of pay set out in the Agreement Booklet to determine the number of hours worked, and then multiplied by the contribution amount. Using this method, Mr. Cairns found Steve Gilbert Trucking to owe $189,740.42.

Plaintiff has moved for summary judgment claiming that under the Agreement Booklet which Defendant signed he is liable for these contributions. Gilbert has attempted to raise the defense of fraud in the inducement. Furthermore, Gilbert argues that even if he is liable for the contributions the method of calculating the contributions due is inappropriate since some of his drivers worked on a commission basis, he did not pay the union hourly rate, and some drivers received bonuses which were included in the gross pay amount.

## II. Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987). "A scintilla of evidence in support of the nonmovant's position is insufficient to successfully oppose summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Brownell v. Figel,* 950 F.2d 1285 (7th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

### III. Analysis

#### A. LIABILITY

■ After the motion for summary judgment and Defendant's response had been filed, Plaintiff filed a motion to strike portions of Defendant's affidavit in support of his memorandum in opposition to summary judgment. Plaintiff seeks to strike paragraph 3 of Defendant's affidavit which alleges facts to support his claim of fraud in the inducement of the contract. Plaintiff argues that Defendant cannot rely on the affirmative defense of fraud in the inducement because he has failed to assert this affirmative defense in his answer as required by Fed. R.Civ.P. 8(c). Since Defendant cannot rely on the affirmative defense of fraud, Plaintiff argues, under Rule 56(e) this portion of De-

fendant's affidavit should be struck. Defendant argues in his response to the motion to strike that he is attempting to amend his answer to include the affirmative defense of fraud. Furthermore, Defendant argues that at this stage of the case the absence of pleading the affirmative defense is irrelevant.

After the filing of the motion to strike and Defendant's response, United States Magistrate Judge Charles H. Evans denied Defendant's motion to amend his Complaint. Defendant, therefore, has not averred fraud as an affirmative defense as required by Rule 8(c). Failure to plead an affirmative defense as required by Rule 8(c) results in waiver of that defense. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 235 (7th Cir.1991). Accordingly, Defendant has waived the defense of fraud and paragraph 3 of the affidavit will be struck.

Without the affirmative defense of fraud, Defendant has no legitimate ground to deny liability. Contrary to Defendant's assertion, failure to plead the affirmative defense of fraud is relevant at this stage of the case. As cited above, a genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Since Defendant waived the defense of fraud, any evidence attempting to be introduced at trial to support such a defense would be excluded as irrelevant. As no evidence to support the defense of fraud would be admissable, a jury could never return a verdict for Defendant based on that defense.

■ Alternatively, even if Defendant could assert fraud as an affirmative defense, under the law of the Seventh Circuit fraud in the inducement is not a defense to an ERISA § 515, 29 U.S.C. § 1145, action. *Central States, S.E. & S.W. v. Gerber Truck,* 870 F.2d 1148 (7th Cir.1989) (en banc). In *Gerber,* the court stated:

[i]f the employer simply points to a defect in [the contract's] formation-such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law-it

must still keep its promise to the pension plans.

*Id.* at 1153. Accordingly, there is no genuine issue as to any material fact and Plaintiff is entitled to a judgment as a matter of law as to liability.

## B. DAMAGES

■ Having determined that Plaintiff is entitled to summary judgment on the issue of liability, there remains the issue of damages. As mentioned above, Defendant hotly disputes the method of calculating the delinquent contributions used by the fund auditor Mr. Cairns. Mr. Cairns started with the gross pay of each covered employee, divided that amount by the union hourly wage rate as set out in the Agreement Booklet, and then multiplied by the applicable contribution rate which was also set out in the Agreement Booklet. Defendant argues that his drivers only performed covered work 80–90 percent of the time, he did not pay all drivers the union hourly wage rate, some drivers were paid on commission, and many drivers received bonuses. All of these factors if true would result in Plaintiff's damages figure being inaccurate. Defendant argues that Plaintiff could have obtained this information by deposing his employees and himself.

Plaintiff argues that Defendant's failure to keep adequate records as required by ERISA has forced them to use an admittedly crude method to determine the amount of delinquent contributions. There is no other available method, however, Plaintiff argues, to calculate the delinquent contributions due to Defendant's inadequate records. Accordingly, Plaintiff contends that the burden is on Defendant to prove that Plaintiff's method is unreasonable.

■ There is no Seventh Circuit case directly dealing with the burden of proof in determining damages in this type of an ERISA case. *See Carpenters Fringe Ben. Funds v. Able Bros. Const.*, 813 F.Supp. 643, 650 (N.D.Ill.1993). There are, however, two circuit court cases on point, one from the Eleventh Circuit *Combs v. King*, 764 F.2d 818 (11th Cir.1985), and one from the Ninth Circuit *Brick Masons Pension Tr. v. Indus. Fence & Supply*, 839 F.2d 1333 (9th Cir.

1988). Both cases hold that under ERISA an employer is under a duty to keep records of its employees' hours in order to permit the calculation of benefits. 29 U.S.C. § 1059(a)(1). Furthermore, under these cases once a trust fund has established liability and that an employer has failed to keep adequate records, the burden shifts to the employer to come forward with evidence that the fund's calculations are not a just and reasonable inference of the amounts owing. *Brick Masons*, 839 F.2d at 1338–39; *Combs*, 764 F.2d at 826–27.

The Court will follow the holdings of *Brick Masons* and *Combs*. *See Able Bros.*, 813 F.Supp. at 650–51; *Plumbers' Pension Fund, Local 130 v. Wilber*, 1989 WL 2126 (N.D.Ill.1989); *Roche v. Heating*, 1993 WL 436375 (N.D.Ill.1993). The Court has previously found that Defendant is liable for delinquent contributions and the Court also finds that Defendant has kept inadequate records under 29 U.S.C. § 1059(a)(1). The question then becomes whether Defendant has come forward with "evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from" Plaintiff's evidence. *Combs*, 764 F.2d at 826 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192–93, 90 L.Ed. 1515 (1946)).

Defendant has failed to bring any evidence of the precise amount of worked performed. As mentioned above, Defendant has testified that he does not have any employment records other than the payroll ledgers given to Mr. Cairns. Defendant has also failed to present adequate evidence to negate the reasonableness of the inference to be drawn from Plaintiff's evidence. In fact, Defendant's own expert witness, Mr. William Ringer, testified in his deposition that faced with a similar circumstance he would conduct the audit in the same fashion as did Mr. Cairns. Mr. Ringer also checked the results of Mr. Cairns' audit and after incorporation of some minor changes Mr. Ringer agreed that the audit results were mathematically correct.

In an attempt to challenge the accuracy of Plaintiff's audit, Defendant filed an affidavit with his opposition to the motion for summary judgment which states that he pays

year end bonuses which are recorded as regular income and that he does not pay the union wage rate. In Mr. Cairns' deposition he testified that if Defendant did pay bonuses and did not pay the union wage rate his audit would be inaccurate. According to Defendant these allegations are sufficient to raise a genuine issue of material fact as to the accuracy of Plaintiff's audit.

■ After reviewing the affidavit, the Court finds that it is insufficient to meet Defendant's burden. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Defendant's affidavit contains no documentary evidence whatsoever to support his conclusory statements that he does not pay union wages and that he pays bonuses.[1]

Defendant, in his memorandum in opposition to summary judgment, argues that Plaintiff could have conducted a more accurate audit by deposing Defendant's employees and Defendant himself, with regard to the payment of bonuses, commissions, and hourly rates. Under *Combs* and *Brick Masons*, however, it is Defendant's burden to come forward with some credible evidence to prove that Plaintiff's calculations are inaccurate. As the court in *Brick Masons* stated, "[a]n employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required." *Brick Masons*, 839 F.2d at 1338.

Defendant could have produced cancelled checks, bank records, or depositions or affidavits of former and current employees to support his statements concerning bonuses and wage rates. Defendant has failed to do so. Defendant cannot be heard to complain of inaccuracies in Plaintiff's audit when he has failed to keep proper records and failed to conduct any investigation to collect specific facts to challenge Plaintiff's audit. Accordingly, as to damages there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law.

*Ergo*, Plaintiff's motion to strike certain portions of Steve Gilbert's affidavit (d/e 36) is ALLOWED IN PART and DENIED IN PART. The Court will strike Paragraph 3 of the affidavit, however, the Court will not strike paragraphs 9 and 10. Plaintiff's motion for summary judgment (d/e 33) is ALLOWED.

---

1. Plaintiff has moved to strike the paragraphs of Defendant's affidavit containing the allegations of payment of bonuses and non-payment of union hourly wages. Plaintiff argues that these paragraphs are conclusory statements with no supporting facts as to which employees were paid bonuses and how much and what hourly rate each employee was paid. Defendant argues that these paragraphs merely contain facts and are not conclusions at all. While the Court finds that Defendant's affidavit is not sufficient to oppose Plaintiff's motion, these paragraphs need not be stricken.